**Robert Lee THOMAS, Appellant,**

v.

**STATE OF NORTH CAROLINA and Mr. Bill Mahoney, Superintendent, Appellees.**

**No. 15070.**

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1971.

Decided Sept. 10, 1971.

Walter G. Lohr, Jr. [court-assigned counsel], and George A. Nelson, Baltimore, Md., for appellant.

Jacob L. Safron, Asst. Atty. Gen. of North Carolina (Robert Morgan, Atty. Gen. of North Carolina, on the brief), for appellees.

Before BOREMAN, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Robert Lee Thomas, presently serving a life sentence in a North Carolina prison for murder, appeals the district court's denial of his petition for a writ of habeas corpus, 315 F.Supp. 873. We hold that Thomas' confession was improperly admitted into evidence and we reverse.[1]

Thomas, a farm laborer who had dropped out of school before completing the fifth grade, was 15 years old when he was convicted. He could read or write very little and had a composite I. Q. of 72, which indicated mild mental deficiency according to a psychiatrist who examined him at a state hospital.

A police officer, thinking Thomas too young to drive, stopped him shortly before midnight, February 11, 1962, while he was operating a pickup truck in Fayetteville, North Carolina. After the officer noticed the vehicle had been "straight-wired," Thomas admitted the truck was stolen, and he was taken to the police station.

With the exception of a brief interruption soon after midnight, three officers questioned him continuously for about four hours. Part of the interrogation occurred at police headquarters and part in a police car when the police drove him to the scene of the murder. At 4:30 a. m. he was placed in a cell, but in three hours his interrogation resumed with fresh officers. From 7:30 a. m. until 5:00 p. m. he was questioned by several officers either at the station or in police cars as he was driven to places where a number of crimes had been committed. At 5:00 p. m., some 17 hours after he was arrested, Thomas began to make a formal confession that he had stabbed and robbed an elderly man. Two hours later, after signing a stenographic transcript of his statement, he was returned to his cell.

Thomas was not informed that he had a right to consult an attorney until this information was included in the preface to his formal statement. On at least two occasions the police told him he had the right to remain silent, but each time this advice was coupled with the admonition that it would be in his best interest to tell everything or that it would be best for him to tell the truth. During the 19 hours he was held incommunicado, the police did not notify his parents that he was in custody.

North Carolina law requires the police to take a person arrested without a warrant before a magistrate immediately or "as soon as may be," and in no event may a person be held in custody for more than 12 hours without a warrant.[2]

---

1. Thomas was tried before Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were decided. Thus under the rule of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the scope of the inquiry with respect to Thomas' confession is limited to whether it was involuntarily given. See Note, Prospectivity and Retroactivity of Supreme Court Constitutional Interpretations, 5 U.Rich.L.Rev. 129 (1970).

2. 1 C N.C.Gen.Stat. § 15–46 (Repl. Vol. 1965). Procedure on arrest without warrant.—Every person arrested without warrant shall be either immediately taken before some magistrate having jurisdiction to issue a warrant in the case, or else committed to the county prison, and, as soon as may be, taken before such magistrate, who, on proper proof, shall issue a warrant and thereon proceed to act as may be required by law.

§ 15–47. Arresting officer to inform offender of charge, allow bail except in capital cases, and permit communication with counsel or friends.—Upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State, with or without warrant, it shall be the

Despite the salutary provisions of these statutes, Thomas was not taken before a magistrate until more than two days after his arrest, when on February 14, without benefit of counsel, he appeared in the Recorder's Court and waived a preliminary hearing.

The North Carolina Superior Court subsequently appointed counsel for Thomas and ordered a psychiatric examination to determine his competency to stand trial. While he was being examined, Thomas repudiated his statement, denied his guilt, and said that he confessed because he got "so tired of the questioning." At his trial and in the post-conviction hearing, Thomas consistently maintained that his lengthy interrogation was the only reason he confessed. He has never claimed that his confession was the result of any other mistreatment.

■■■ The sole issue before us is whether Thomas' "will was overborne by the sustained pressures upon him." Davis v. North Carolina, 384 U.S. 737, 739, 86 S.Ct. 1761, 1763, 16 L.Ed.2d 895 (1966). In resolving this question, an appellate court must independently determine the ultimate issue of voluntariness. Ashcraft v. Tennessee, 322 U.S. 143, 147, 64 S.Ct. 921, 88 L.Ed. 1192 (1944). And because of Thomas' age the entire record must be scrutinized with special care. Haley v. Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224 (1948). The pertinent facts are: Thomas' youth, his low mentality, and limited education, his incommunicado detention and interrogation for 19 hours by a number of different police officers who allowed him only scant time to rest, the inadequate explanation of his consti-

tutional rights and the suggestions that it would be better for him to confess, the failure of the police to notify his parents or to afford him the opportunity to consult with a lawyer, and the delay in producing him before a magistrate. All of these elements combine, we hold, to establish that Thomas' confession cannot be deemed a voluntary act and that its admission into evidence denied him due process of law. Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L. Ed.2d 325 (1962); Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Williams v. Peyton, 404 F.2d 528 (4th Cir. 1968).

Indeed, the facts of this case bear a marked similarity to those of *Haley*. There a fifteen-year old boy, held incommunicado without an explanation of his constitutional rights, was interrogated by relays of police for five hours. Concurring in the judgment of the Court, Mr. Justice Frankfurter remarked:

"Unhappily we have neither physical nor intellectual weights and measures by which judicial judgment can determine when pressures in securing a confession reach the coercive intensity that calls for the exclusion of a statement so secured. Of course, the police meant to exercise pressures upon Haley to make him talk. That was the very purpose of their procedure. In concluding that a statement is not voluntary which results from pressures such as were exerted in this case to make a lad of fifteen talk when the Constitution gave him the right to keep silent and when the situation was so contrived that appreciation of his rights and thereby the means of asserting them were effec-

duty of the officer making the arrest to immediately inform the person arrested of the charge against him, and it shall further be the duty of the officer making said arrest, except in capital cases, to have bail fixed in a reasonable sum, and the person so arrested shall be permitted to give bail bond; and it shall be the duty of the officer making the arrest to permit the person so arrested to communicate with counsel and friends immediately, and

the right of such persons to communicate with counsel and friends shall not be denied. Provided that in no event shall the prisoner be kept in custody for a longer period than twelve hours without a warrant.

Any officer who shall violate the provisions of this section shall be guilty of a misdemeanor and shall be fined or imprisoned, or both, in the discretion of the court.

tively withheld from him by the police, I do not believe I express a merely personal bias against such a procedure. Such a finding, I believe, reflects those fundamental notions of fairness and justice in the determination of guilt or innocence which lie embedded in the feelings of the American people and are enshrined in the Due Process Clause of the Fourteenth Amendment. To remove the inducement to resort to such methods this Court has repeatedly denied use of the fruits of illicit methods." 332 U.S. at 606, 68 S.Ct. at 307.

These observations, written more than 20 years ago, furnish sound reason for holding Thomas' confession inadmissible as evidence against him.

The judgment of the district court is reversed and this case is remanded for the issuance of a writ of habeas corpus. Execution of the writ may be delayed for a reasonable time to permit the State of North Carolina to retry Thomas.