**UNITED STATES of America,**
**Plaintiff,**

v.

**Elvis Lee RAMSEY, Defendant.**

**No. 73 CR 198 W 4.**

United States District Court,
W. D. Missouri, W. D.

Dec. 18, 1973.

Mary A. Senner, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Thomas M. Larson, Asst. Federal Public Defender, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

The defendant in this case is a seventeen year old, juvenile, who was sixteen years old at the time of the alleged offense. On August 17, 1973, at his arraignment, the defendant consented to allow the government to proceed against him by an information charging a juvenile delinquency pursuant to 18 U.S.C. §§ 5031–5033. The information charges that the defendant transported a stolen motor vehicle from Kansas to Missouri, knowing said motor vehicle to have been stolen, in violation of 18 U.S.C. § 2312. The defendant has, at all proceedings before this Court, been represented by counsel, Mr. Thomas Larson, Assistant Federal Public Defender for the Western District of Missouri.

Pursuant to Rule 41(f) F.R.Cr.P., the defendant moved on August 16, 1973, to suppress the use in evidence of certain alleged admissions and statements made by him. A full evidentiary hearing before this Court to consider defendant's motion was held on September 7, 1973. Testifying at the hearing were Patrolman Donald Lauffer, Kansas City, Missouri, Police Department; Detective Robert Keys, Kansas City, Missouri Police Department—Youth Bureau; Special Agent Otto T. Handwerk, Federal Bureau of Investigation; and the defendant, Elvis Lee Ramsey.

The evidence adduced at the hearing established the following pattern of events. At approximately 1:20 A.M. on July 31, 1973, Patrolman Lauffer saw the defendant near 27th and Jackson Streets, Kansas City, Missouri, driving a green Volkswagen containing four other passengers. After observing the defendant, Patroman Lauffer did not feel that the defendant was of legal driving age, and consequently turned around to attempt to stop the vehicle in order to make a license check of its driver. He then observed the vehicle run off the road and strike a tree, at which time all five of the occupants abandoned the vehicle and attempted to leave the scene.

Officer Lauffer pursued and apprehended the defendant at approximately 1:30 A.M. on a terrace near 28th and Jackson Streets. At the scene, Patrolman Lauffer asked the defendant only his name and to identify the other persons that had been with him. The defendant responded by telling Officer Lauffer his name, and that the others were his "brothers and cousins". Officer Lauffer then took the defendant to the 27th Street Station (Kansas City, Missouri, Police Department), arriving between 2:00 and 2:15 A.M. In the interim, two of the other persons who had been in the car with the defendant (J. E. Bell and T. E. Bell, cousins of the defendant) had been arrested by another officer and were present at the station.

The defendant was then fully advised of his rights by Officer Lauffer reading to him the "Miranda" card, and making some further explanation, including specifically telling him that he did not have to say anything if he did not want to.[1] The defendant then proceeded to freely answer a few questions from Officer Lauffer. Ramsey told Officer Lauffer, in response to Lauffer's questions, that he, his brothers, and his cousins had "hot-wired" the car in question in Kansas, jump-started it, and drove it to Missouri. The defendant's statements were not reduced to writing by Officer Lauffer at that time, but later in the day were added to his report of the incident.

Detective Keys at the Youth Unit was notified of the arrest by Officer Lauffer via telephone at approximately 2:30 A. M., at which time Officer Lauffer may or may not have told him of the defendant's statements. The defendant's mother was notified of the arrest by phone at about 3:00 A.M. Officer Lauffer then transported the defendant to the Youth Unit at 725 Locust, Kansas City, Missouri.

The defendant was seen by Detective Robert Keys of the Kansas City, Missouri Police Department Youth Bureau at or shortly before 4:30 A.M. that morning. At that time, Detective Keys was aware of the defendant's age (16), but was "probably not" aware that the defendant was then on probation imposed by the Jackson County, Missouri, Juvenile Court from a previous matter. The other two individuals arrested in the incident (J. E. Bell and T. E. Bell, cousins of the defendant) were also present. Detective Keys had read Officer Lauffer's report of the incident and arrest (which at this time did not include the defendant's statements) before he saw the defendant. Detective Keys saw the defendant, in accordance with his normal duties, to determine what, if any charges should be referred to the Juvenile Court against this defendant. Detective Keys questioned Ramsey with the intent to determine if he should refer a charge against him of "hit and run", and at the time he questioned him, had no reason to believe that the Volkswagen the defendant had been driving was stolen, and therefore did not intend to question him about any theft.

Detective Keys first asked the defendant if he knew why he was at the station, to which Ramsey replied: "Yes; auto theft—accident".[2] Keys then fully again advised the defendant of his rights by reading to him the "Miranda" card. He then proceeded to ask Ramsey if he had stolen the car, to which Ramsey responded "Yes."; and when asked where he had stolen it, responded "Kansas.", and then declined to talk further with Keys.[3] At this point, Detective

1. Officer Lauffer testified that the defendant was "well aware of his rights". The defendant testified that he did remember being advised of his rights by Officer Lauffer, although he did not specifically remember being advised that the Court would appoint him an attorney should he desire one and not be able to afford one.

2. The defendant testified that he did not make this statement, but rather that one of his cousins had volunteered it.

3. The defendant testified that he did not remember Detective Keys reading him his rights from a card, that he was unable to recall whether or not Detective Keys had advised him of his rights, but did remember speaking with Detective Keys.

Keys referred the defendant to the Juvenile Detention Unit, where he was later released.

Detective Keys made no effort to contact the defendant's parents, and further stated that he had probably violated the established procedure for questioning juveniles in that he had questioned the defendant when neither a parent, attorney, or juvenile officer was present to act for the defendant. The normal procedure is for the questioning to be done at the Juvenile Court with a Deputy Juvenile Officer present.

Special Agent Otto Handwerk of the F.B.I. was informed verbally on August 2, 1973, of the possible federal law violation by Lieutenant Schmidt of the Kansas City, Kansas, Police Department, who indicated that persons had been arrested in Kansas City, Missouri, on July 31, 1973, in possession of an automobile previously reported stolen from the home of its owner, Mr. George Long, in Kansas City, Kansas. Agent Handwerk then acquired from the Kansas City, Missouri, Police Department a copy of Officer Lauffer's report.[4] On August 6, 1973, Agent Handwerk went to see Mr. Patrick Eldridge, Assistant United States Attorney for the Western District of Missouri, and after a conference it was concluded that this matter warranted further federal investigation. At this time Agent Handwerk felt he needed to interview the owner of the stolen 1966 Volkswagen, and also to interview the defendant, Elvis Ramsey, before he would have enough information to file a complaint.

Agent Handwerk went to the defendant's home between two and four P.M. on August 6, 1973, and was informed that the defendant was not at home but was out running an errand. He subsequently determined that the defendant was later that evening taken into custody and being detained at the Jackson County, Missouri, Juvenile Detention Home at 26th and Cherry Streets, Kansas City, Missouri, on a charge of shoplifting. Officer Handwerk went to the defendant's home at approximately 7:55 A.M. on the following morning (August 7) pursuant to an appointment he had made with the defendant's mother, and asked her to accompany him to the Juvenile Detention Home so that she could be present when he interviewed the defendant. She declined to accompany him.

At this point, Agent Handwerk, along with Special Agent Trammel (F.B.I.), went to the Juvenile Detention Home for the purpose of interviewing Elvis Ramsey. The interview began at approximately 8:17 A.M. and concluded at approximately 9:11 A.M. on the morning of August 7, 1973. Agent Handwerk introduced himself to the defendant, showed him his credentials, and then introduced Agent Trammel. The interview was conducted in the presence of Mr. Frank Seivers, an officer of the juvenile facility.

Agent Handwerk first told the defendant that he wanted to talk to him about a 1966 Volkswagen stolen in Kansas City, Kansas. Agent Handwerk then totally advised him of his rights, which the defendant then indicated that he understood. Further, Agent Handwerk then told the defendant that he would ask him no questions unless an attorney were present if the defendant so desired, and the defendant answered that he understood. Agent Handwerk then read to Ramsey a waiver of rights form, after the defendant indicated that he did not read very well. This form was not signed by the defendant, who indicated that he did not understand the word "coercion". Accordingly, Agent Handwerk used more simple terms, both then and later in the interview. Thoughout the interview the defendant was alert, often acknowledging questions and indicating answers with head motions, and answering all questions promptly and

4. A second page of this report, marked exhibit # 1–A, contains a paragraph indicating that the defendant made a statement to Officer Lauffer. This is the part of the report that was not received by Detective Keys on July 31, 1973.

without delay. Before any questioning began, the defendant stated that he did not want an attorney at that time.

During the course of the interview, the defendant told Handwerk that he was in Kansas City, Kansas, observed the vehicle being stolen, and that he drove the stolen Volkswagen from Kansas City, Kansas to Kansas City, Missouri, and was driving the car when he struck a tree, fled, and was arrested. At the conclusion of the interview, Agent Handwerk went to the United States Courthouse and made a formal complaint against Elvis Ramsey for violation of 18 U.S.C. § 2312. The defendant was first taken into federal custody later that afternoon at the Jackson County Juvenile Detention Home, pursuant to a warrant for arrest issued by Judge Richard Duncan of this Court.[5]

On direct examination, the defendant testified that he knew he had a right to remain silent, but that he did not know of other rights, and that at previous encounters with the police in previous juvenile proceedings, he did not remember having an attorney present.

Turning to defendant's contentions in this matter, it must be noted at the outset that defendant does not contend that any of the officers who questioned the defendant failed to fully and completely advise the defendant of his rights as required by the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in advance of any questioning. And, as counsel for defendant advised the Court at the close of the evidence in the hearing, defendant does not contend that any of the statements made by the defendant were the result of coercion or oppressive circumstances. Rather, the defendant moves to suppress these statements on

three theories. In substance, defendant contends that:

1. That there has been no showing that the defendant understood his rights as explained to him; that he did not understand his rights; and that consequently the defendant could not and did not make a knowing, intelligent, understanding, and voluntary waiver of his rights;

2. That the procedures under which the defendant was questioned by Officers Lauffer and Keys were violative of Missouri state law, and, in the interests of comity, as these statements could not be used against the defendant in a Missouri state criminal proceeding, this Court should not allow them to be used in a federal proceeding; and

3. That the statements made to Agent Handwerk should be suppressed as that interview was conducted in violation of the terms of 18 U.S.C. § 5035.

For the reasons to be set out below in this memorandum, defendant's contentions should and will be overruled.

### I.

Initially, to reiterate, the Court has found that before the defendant made any incriminating statements to any officer, he had been completely and fully advised of his rights as mandated by Miranda v. Arizona, supra, by that Officer. In regard to defendant's first contention, as set out above, the question before the Court now becomes twofold: (1) Whether or not under the facts of this case defendant made a valid waiver of his rights in or before speaking to the officers; and (2) whether or not under the totality of the circumstances in this case the situations in which the

---

5. As to the interview with Agent Handwerk, the defendant testified that he overheard "someone", a "colored man", tell him prior to the interview that he could go home as he was released. However, he was unable to identify who had said this, but stated that it was not Agent Handwerk, Agent Trammel, or Mr. Seivers. He testified that no one

threatened him or promised him anything in order to get him to talk to Agent Handwerk, that it was his own decision to do so, and that Agent Handwerk was "nice and polite" to him at all times. He further testified that he knew that he did not have to talk to Handwerk, and that he had been told that whatever he said could be used against him.

defendant made the statements in question comport with due process requirements.

 Under *Miranda*, after an individual has been completely advised of his rights, unless that individual makes a knowing, intelligent, understanding, and voluntary waiver of those rights, no statement he makes may be used as evidence against him. This guarantee against compulsory self-incrimination is applicable in juvenile proceedings as well as adult criminal proceedings. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). And, as the Supreme Court noted in *Gault*, special care must be taken to insure that a valid waiver has been made in the case of juveniles. See also, Haley v. Ohio, 332 U. S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948). As the Supreme Court stated:

> "We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." In re Gault, supra, 387 U.S. at 55, 87 S.Ct. at 1458.

In the cases of statements made by persons of adolescent age, the age of the individual alone, without more, is not sufficient to prevent a valid waiver of rights to be made. In proper circumstances, persons of the defendant's age, and younger, may waive their rights to remain silent and to counsel, etc. Rather, whether a valid waiver has been made must be determined in each particular case upon the particular facts and circumstances of that case. In re Gault, supra; Cotton v. United States, 446 F. 2d 107 (8th Cir. 1971); United States ex rel. Brown v. Rundle, 450 F.2d 517 (3d Cir. 1971); United States v. Miller, 453 F.2d 634 (4th Cir. 1972); Rivers v. United States, 400 F.2d 935 (5th Cir. 1968); West v. United States, 399 F.2d 467 (5th Cir. 1968). Under the facts and circumstances of this case, both from the evidence adduced at the hearing on the instant motions and from the Court's own observation of the defendant at the hearing both on and off of the witness stand, it is apparent that the defendant did and does possess sufficient mental competence to understand his rights as they were explained to him, especially in view of his previous experience with law enforcement authorities, notwithstanding the facts that he is not bright, and (taking the defendant at his word) that he does not read very well. And, the Court further finds that he did understand his rights as they were explained to him by Officers Lauffer and Keys, and by Agent Handwerk. There is no suggestion that the defendant did not voluntarily respond to the questions asked him after being advised of his rights. Defendant at no time requested an attorney to be present. There is no suggestion in this case that the statements made by the defendant were suggested or coerced in any way, or that they were the product of oppressive circumstances, or that the defendant was promised anything or threatened in any way, or that the defendant was speaking out of fear, despair, or fantasy. Under these facts, in responding to the officers' questions after being totally advised of his rights, and understanding those rights, the defendant made a knowing, intelligent understanding, and voluntary waiver of those rights. See Cotton v. United States, 446 F.2d 107 at 111 (8th Cir. 1971).

Further, under the totality of the circumstances herein existing, the situations in which the defendant made the statements in issue here did not violate due process. There was no long sustained period of questioning in this case. The defendant was not incarcerated for any long period, nor is there any suggestion that he was held incommunicado at any time. No threats or promises of any type were made to him. There is no indication that the questioning in this case was oppressive in any manner. The circumstances which were found to violate due process with respect to the statements of juveniles in the cases of Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962) or Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L. Ed. 224 (1948), are simply not present in this case. See, also, Thomas v. State of North Carolina, 447 F.2d 1320 (4th Cir. 1971); United States ex rel. Burgos v. Follette, 448 F.2d 130 (2d Cir. 1971), and compare Cotton v. United States, supra, and Makarewicz v. Scafati, 438 F.2d 474 (1st Cir. 1971), cert. den. 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145.

Consequently, for these reasons, defendant's first contention cannot be sustained.

## II.

Defendant's second contention is that the statements made to Officers Lauffer and Keys, even if made in compliance with federal constitutional standards (as this Court has just held above), should nevertheless be suppressed. Defendant argues that because these statements were made to the officers without their compliance with § 211.061 (RSMo 1969), V.A.M.S., and thus could not be introduced as evidence against this defendant in a Missouri juvenile or criminal proceeding, the principles of comity require that the statements be suppressed in this federal proceeding. The only federal case authority for this proposition cited by the defendant is the Supreme Court's decision in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L. Ed.2d 1669 (1960).

Section 211.061 V.A.M.S. states:

"1. When a child is taken into custody with or without a warrant for an offense, the child together with any information concerning him and the personal property found in his possession, shall be taken immediately and directly before the juvenile court or delivered to the juvenile officer or person acting for him."

The Missouri Supreme Court has held that the above statute, is violated by an officer who interrogates a juvenile before taking him immediately to the juvenile court, and such a violation renders inadmissible, in any subsequent Missouri juvenile or criminal proceeding, any statements the juvenile may have made to the officer prior to his delivery to the juvenile authorities. See State v. Arbeiter, 408 S.W.2d 26 (Mo.1966), and State v. Arbeiter, 449 S.W.2d 627 (Mo.1970). For purposes of this memorandum, this Court expresses no opinion as to whether, under the facts of this case, the statements of the defendant to Officers Keys and Lauffer would be admissible in a Missouri or other state criminal or juvenile proceeding against him, for, even assuming *arguendo* that these statements would not be admissible in such a proceeding, these statements are nevertheless admissible under these facts in this federal proceeding.

Elkins v. United States, supra, was the case in which the Supreme Court overturned the so called "silver platter" doctrine, and held that evidence obtained by state officers in violation of the Fourth Amendment prohibition against unreasonable searches and seizures was henceforth inadmissible in federal criminal trials. The essence of the holding in *Elkins* is that if evidence is obtained in violation of the Fourth Amendment to the Federal Constitution, such evidence is not admissible in a federal criminal proceeding regardless of whether the officers who obtained the evidence were

federal officers or state officers. As the Supreme Court stated in *Elkins*:

"For these reasons we hold that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. . . . The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." Elkins v. United States, supra, 364 U.S. at 223, 80 S.Ct. at 1447.

*Elkins* does not hold, however, that evidence obtained by state officers in compliance with federal constitutional standards but in violation of state statutory guidelines is likewise inadmissible in federal criminal trials or juvenile proceedings. The test is one of federal constitutional law, not one of state statutory interpretation. As stated in Gullett v. United States:

"The fact that evidence was obtained by state officers and is not being used in a federal prosecution is, of course, immaterial, *provided the obtaining of the evidence was not in violation of the defendants' immunity from unreasonable searches and seizures under the Fourth Amendment* to the Constitution of the United States." 387 F. 2d 307 (8th Cir. 1967) at 308. (Emphasis supplied).

See also United States v. Castillo, 449 F.2d 1300 (5th Cir. 1971), and compare Patterson v. Lash, 452 F.2d 150 (7th Cir. 1971), cert. den. 406 U.S. 1075, 92 S.Ct. 1524, 31 L.Ed.2d 809.

■ In this case it is not the Fourth Amendment, as in *Elkins*, that is in issue, but rather the Fifth and Sixth Amendments, and even though *Elkins* extends to Fifth and Sixth Amendment situations, it clearly does not apply in this case. As set out above in this memorandum, the standards for admissibility of statements made by juveniles in federal proceedings are governed by Miranda v. Arizona, supra, and In re Gault, supra, and in the instant case those standards were fully complied with by the state (and federal) officers. The statements made by the defendant were not elicited in violation of his federal constitutional rights. That Missouri may have by statute and state court interpretation of that statute restricted the admissibility of statements made by juveniles beyond the restrictions of the federal constitution does not mean that those standards apply in a federal proceeding. To restate *Elkins*:

"The test is one of federal law, neither enlarged by what one state court may have countenanced, *nor diminished by what another may have colorably suppressed.*" 364 U.S. at 223, 80 S.Ct. at 1447. (Emphasis supplied.)

■■ The fact that these statements were obtained by state officers, even if arguably in violation of a state statute, does not render them inadmissible in this federal proceeding unless those statements were obtained in violation of the federal constitutional standards applying, here the Fifth and Sixth Amendments.[6] Hence, defendant's second contention must be overruled.[7]

6. As stated in On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952):

"Finally, petitioner contends that even though he be overruled in all else, the evidence should be excluded as a means of disciplining law enforcement officers . . . . In McNabb [McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819], however, we held that, where defendants had been unlawfully detained in violation of the federal statute requiring prompt arraignment before a commissioner,

a confession made during the detention would be excluded as evidence in federal courts even though not inadmissible on the ground of any otherwise involuntary character. But here neither agent nor informer violated any federal law; *and violation of state law, even had it been shown here, as it was not, would not render the evidence obtained inadmissible in federal courts.*" 343 U.S. at 754, 72 S.Ct. at 972. (Emphasis supplied).

7. In addition to the argument that these statements would not be admissible in a

### III.

Defendant's final contention is that the statements made by the defendant to Special Agent Handwerk of the F.B.I. should be suppressed for failure of Agent Handwerk to comply with the provisions of 18 U.S.C. § 5035. That section provides, in pertinent part, that:

"Whenever a juvenile is arrested for an alleged violation of any law of the United States, the arresting officer shall immediately notify the Attorney General.

"If the juvenile is not forthwith taken before a committing magistrate, he may be detained in such juvenile home or other suitable place of detention as the Attorney General may designate for such purposes . . ..

"In no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate."

In support of his motion, defendant cites the cases of United States v. Glover, 372 F.2d 43 (2d Cir. 1967) and United States v. Binet, 442 F.2d 296 (2d Cir. 1971).

However, neither Glover nor Binet were situations comparable to the instant case. In Glover, the defendant

was arrested at 6:00 p. m. and spent the night in a Federal House of Detention. At 9:00 a. m. the next morning, he was taken before a United States Postal Inspector, advised of his rights, and proceeded to make an incriminating statement. He was then arraigned before the United States Commissioner between 10:30 a. m. and 11:00 a. m.

In Binet, the defendant was arrested by United States Postal Inspectors and taken to a post office about 7:00 a. m. one morning. At about 10:00 a. m. he was taken to the United States Courthouse, where he remained until 2:00 p. m. that day, when he was interrogated by an Assistant United States Attorney, at which time he made incriminating statements. He was then taken before the United States Commissioner.

In construing § 5035 with relation to these two cases, the Second Circuit, in both cases, stated:

"Section 5035 evidences a strong Congressional concern with the protection of the rights of juveniles. Unless the juvenile is taken 'forthwith' before a committing magistrate, detention shall not 'be for a longer period than is necessary to produce the juvenile before a committing magistrate.' There is here no hint of any purpose to al-

state proceeding against the defendant because the interrogating officers did not comply with § 211.061 RSMo., V.A.M.S., the state statute governing the procedures to be followed upon the arrest and taking into custody of a juvenile, it could be argued that had Officers Lauffer and Keys been federal officers (or had they been arresting and holding the defendant for a violation of a federal statute) these statements would be inadmissible in this proceeding due to non-compliance with the Federal Juvenile Delinquency Act, 18 U.S.C. § 5035; in that the defendant may have been detained by Officers Lauffer and Keys for a longer than necessary time to produce him before a committing magistrate. See United States v. Glover, 372 F.2d 43 (2d Cir. 1967), and United States v. Binet, 442 F.2d 296 (2d Cir. 1971). However, neither 18 U.S.C. § 5035 nor § 211.061 V.A.M.S. governs the instant situation, in which state officers made the arrest and detention, and elicited statements from the defendant (in full compli-

ance with applicable federal constitutional standards) and the evidence is then sought to be introduced in a federal proceeding. In the absence of federal statutory guidance, the standard of admissibility of these statements in a federal proceeding are governed by the federal constitution, and not by what may be a more restrictive state statute or inapplicable federal statute. In the instant case the defendant was not arrested by the state officers for a violation of any federal law as provided in 18 U.S.C. § 5035. This Court has found no precedent which would require state officers arresting a juvenile for a violation of state law to comply with the provisions of 18 U.S.C. § 5035 in order that statements elicited from that juvenile be admissible in any subsequent federal criminal (or juvenile delinquency) proceeding. Thus, 18 U.S.C. § 5035 is not applicable in this case.

See In re K.W.B., 500 S.W.2d 275 (Mo. App.1973), as to further application of Missouri's juvenile statutes in this regard.

## 1316

low detention for any other objective than prompt arraignment before a judicial officer, so that the magistrate may explain and protect the juvenile's rights—among others, the right against self-incrimination and the right to the assistance of counsel . . . .

"Miranda v. State of Arizona, . . . held that 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant, unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' In the case of a juvenile, compliance with the mandate of the Juvenile Act should be the minimum requirement of such safeguards. *Treatment of the accused after arrest as a chattel in the possession of the officers, deliverable at will to the inspector's officers for interrogation, is a plain departure from the command of the statute for forthwith production of the juvenile before a magistrate. Statements taken while the statute is being ignored in this fashion must be held inadmissible.* (Emphasis supplied.)" United States v. Binet, supra, 442 F.2d at 299, citing United States v. Glover, 372 F.2d at 46.

In accordance with the above, the convictions of both Binet and Glover were reversed, as it was held that the statements made by them before being taken before a magistrate were inadmissible.

 However, under the facts in the case presently before the Court, a different conclusion is required. When the defendant was interviewed by Agent Handwerk, he was not in federal custody and had not yet been arrested for a violation of any law of the United States. Rather, he was being held in state custody on state charges. At the interview, which lasted less than one hour, the de-

fendant was being interviewed in the course of what was then only an investigation. In short, the defendant, during this interview, had not been arrested for a violation of the laws of the United States, and was not being detained in federal custody. 18 U.S.C. § 5035 does not, by its very terms, apply to situations in which an investigatory interview is being conducted prior to any arrest for violation of federal law or detention in federal custody. Accordingly, defendant's contention numbered 3 is without merit. Compare Cotton v. United States, 446 F.2d 107 (8th Cir. 1971).[8]

Accordingly, for the reasons stated previously in this memorandum, defendant's motion to suppress the use in evidence of those statements made by him mentioned herein must be and hereby is denied.

It is so ordered.

---

8. There is nothing in the record to suggest that subsequent to defendant's being taken into custody on the federal charges there was not full compliance with 18 U.S.C. § 5035.