Lawrence BARTLEY, Petitioner–
Appellant,

v.

Daniel A. SENKOWSKI, Superinten-
dent of Clinton Correctional Fa-
cility, Respondent–Appellee.

Docket No. 04–4351.

United States Court of Appeals,
Second Circuit.

July 26, 2005.

Daniel A. Hochheiser, Hochheiser & Hochheiser, LLP, New York, NY, for Petitioner–Appellant.

Karen Wigle Weiss, Assistant District Attorney (Tammy J. Smiley, Assistant District Attorney, Denis Dillon, District Attorney, Nassau County, New York, on the brief) Mineola, NY, of counsel.

PRESENT: STRAUB, SACK, Circuit Judges, and KRAVITZ,* District Judge.

## SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 26th day of July, two thousand five.

AFTER ARGUMENT, AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

On October 16, 1992, Petitioner–Appellant Lawrence Bartley was convicted after a bench trial conducted in the New York Supreme Court, Nassau County, on charges of second degree murder, assault, reckless endangerment, and criminal possession of a weapon, for his participation in a shooting incident that occurred in December 1990 at the Sunrise Cinema movie theater in Valley Stream, New York. The evidence presented at that trial demonstrated that, at approximately 11:45 p.m. on December 25, 1990, Bartley was in the theater with a group of his friends, known as the "Young Guns." A verbal dispute broke out between the Young Guns and another group. The confrontation quickly escalated to a shoot-out, resulting in the death of one innocent bystander and injury to three others.

Nassau County law enforcement was called to the scene. Their investigation soon led to aspiring Young Gun Travis James. James admitted being in the theater that night with an unloaded revolver and also described the roles played by members of the Young Guns, including Bartley, during the shooting. Based on this information the police staked-out Bartley's residence. At approximately 7:00 p.m. on December 27, 1990, Nassau County law enforcement observed Bartley and other individuals exit Bartley's house and get into a car driven by fellow Young Gun Norman Williamson. When the police attempted to stop the car, Williamson sped away, leading law enforcement on a high-speed chase that ended only when the car entered an alley without egress. All those in the car fled on foot, but Bartley was apprehended in a neighboring yard.

Detective Mullen recited to Bartley his *Miranda* rights at the scene and placed him under arrest. Bartley was transported to police headquarters where he was again read his *Miranda* rights, which he waived by written consent at approximately 9:00 p.m. At the time of his arrest, Bartley was seventeen years old and in the twelfth grade.

Bartley initially denied any involvement in the Sunrise shooting, but admitted that a gun had been thrown from the car driven

---

* The Hon. Mark R. Kravitz, United States District Judge, District of Connecticut, sitting by designation.

by Williamson during the chase earlier that evening. Bartley agreed to help the officers find the gun and, between 3:55 a.m. and 5:30 a.m. on December 28, 1990, Bartley and several law enforcement officers conducted a fruitless search in the snow along the chase route.

Back at headquarters, Bartley was allowed to rest in a darkened interrogation room from approximately 5:30 a.m. until 6:30 a.m. When Nassau County detectives recommenced the interrogation, Bartley admitted firing a shot from a .380 caliber automatic pistol during the Sunrise Cinema shooting. Bartley reported that other members of the Young Guns had also fired handguns of various calibers during the incident. During this portion of the interview, Bartley was given a breakfast pastry, his first meal since being arrested.

At around 8:30 a.m. on December 28, 1990, a new team of detectives assumed responsibility for Bartley's interrogation. During that transition, Bartley was asked if he would agree to a delay in his arraignment. Bartley consented verbally to this request and later signed a form waiving his rights to a prompt arraignment.

Between approximately 9:00 a.m. and 12:30 p.m. on December 28, 1990, detectives continued the interview, confirming Bartley's prior statements. Bartley then agreed both to give a written statement and to allow a search of his home for the .380 caliber handgun. The interviewing detective again read Bartley his *Miranda* rights, which Bartley again waived. A written statement was subsequently prepared and was signed by Bartley at 3:25 p.m. on December 28, 1990. A search of Bartley's home, conducted in part with the assistance of Bartley's cousin Steven, participating at Bartley's direction, produced a .380 caliber handgun, a second handgun, and ammunition. Bartley later identified the .380 caliber handgun retrieved from his home as the gun he used at the Sunrise Cinema.

Soon after Bartley was arrested, his mother, Cheryl Bartley, learned that her son was in police custody. She testified at the suppression hearing that she tried in vain to locate him. On December 28, 1990, Ms. Bartley hired Michael Doler, Esq., to represent her son. Doler located Bartley and, at 10:18 p.m. on December 29, 1990, contacted the police and directed them to cease all interrogation of Bartley. The police complied, and Bartley was arraigned for murder and related charges the next morning. Subsequent investigation also led to the arrests of several other members of the Young Guns, including Williamson.

On June 13, 1991, Bartley moved to suppress his statements and the gun. This, and other defense motions, were elaborated in a series of hearings before the trial court. Bartley's suppression motions were denied by unpublished, written opinion on June 11, 1992. After judgment was entered, Bartley appealed to the Appellate Division, Second Department, alleging that 1) his age, the length of his interrogation, his isolation from his mother, and the delay in his arraignment, rendered his confession and his consent to search involuntary; 2) the evidence adduced at trial was insufficient to support his conviction; and 3) his sentence was excessive. The Appellate Division affirmed in a published opinion. *People v. Bartley,* 230 A.D.2d 748, 646 N.Y.S.2d 361 (2d Dept.1996). Bartley moved before the Appellate Division for rehearing, but was denied. Bartley sought leave to appeal to the New York Court of Appeals, but that request was denied. *People v. Bartley,* 89 N.Y.2d 862, 653 N.Y.S.2d 285, 675 N.E.2d 1238 (1996).

Bartley filed, and then withdrew, a *habeas corpus* petition. Bartley then moved

the trial court to vacate his conviction based on alleged failures of trial counsel. That motion was denied by unpublished, written opinion on September 28, 1998. A subsequent appeal to the Appellate Division was denied. *People v. Bartley,* 275 A.D.2d 748, 713 N.Y.S.2d 692 (2d Dept. 1996). Bartley then filed another *habeas corpus* petition, which was later stayed at Bartley's request.

Bartley filed a petition for writ of error *coram nobis* in the New York Supreme Court, Appellate Division, alleging error in the adjudication of his ineffective assistance claims. The petition was denied in September 2000, after which Bartley filed a third petition for *habeas corpus* relief, adding a claim of ineffective assistance of counsel. That petition, with exhausted claims from prior petitions, was stayed by order of the District Court on April 25, 2003, to allow Bartley to seek exhaustion of his ineffectiveness claims in the New York courts.

In May 2003 Bartley filed in the trial court another motion to vacate his judgment based on ineffective assistance of counsel. That motion was denied on procedural grounds in August 2003.

In January 2004, Bartley filed a fourth petition for a writ of *habeas corpus,* seeking also to lift the stay in effect on his prior petitions. That request was granted and the District Court, by unpublished opinion dated May 28, 2004, denied the petitions on all grounds and issued a limited certificate of appealability. We assert jurisdiction under 28 U.S.C. §§ 1291 & 2253 and affirm.

This Court reviews *de novo* the District Court's denial of Bartley's petition for a writ of *habeas corpus. Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir.1997). The New York courts' findings of fact are presumed to be correct and Bartley has the burden of rebutting this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). To the extent that Bartley's petition presents claims under federal law that were adjudicated on the merits in the New York courts, our review is limited to the strict standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). We will grant relief only if the state court's judgment: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) was "based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ The questions certified to us are limited to the issue of suppression of defendant's statements and his weapon. In support of his petition, Bartley argues principally that the totality of the circumstances surrounding his confession and grant of consent to search, including delay in his arraignment, his age at the time of questioning, the duration of the interrogation, and isolation from his mother, rendered his waivers of constitutional rights involuntary. The New York courts considered these arguments and denied relief based on independent state procedural bars or on the merits.[1] We find no errors in that result.

---

1. The state argues that Bartley failed to exhaust claims other than his delay-of-arraignment claim. We disagree. Bartley exhausted these claims by including the papers from his appeal to the Appellate Division as part of his motion for leave to appeal to the New York

Court of Appeals. *See Galdamez v. Keane,* 394 F.3d F.3d 68, 71–72 (2d Cir.2005). The follow-up letter from counsel highlighting some specific issues did not serve to limit the scope of the original motion in this case. *See*

■ In this case, pursuant to a signed waiver, Bartley was arraigned on Sunday, December 30, 1990, more than forty-eight hours after he was first taken into custody. Delay in arraignment may be considered as part of the totality of circumstances underlying a Fifth Amendment claim. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *People v. Silas,* 158 A.D.2d 561, 562, 551 N.Y.S.2d 330 (2d Dept.1990). However, all arguments for suppression based on the delay of Bartley's arraignment were rejected by the Appellate Division because they were not preserved. *Bartley,* 230 A.D.2d at 749, 646 N.Y.S.2d 361. In deference to comity and finality we will not, on *habeas* review, consider a question of federal law decided by a state court if the decision rests on an independent state rule of procedure adequate to support the judgment. *See Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *see also Lee v. Kemna,* 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) ("Ordinarily, a violation of firmly established and regularly followed state rules ... will be adequate to foreclose review of a federal claim." (internal quotation marks and citations omitted)). New York Criminal Procedure Law, Section 470.05, bars review on appeal of both claims and theories based on issues that were not raised in the trial court, "when the People would have an evidentiary opportunity to counter." *People v. Tutt,* 38 N.Y.2d 1011, 1012–13, 384 N.Y.S.2d 444, 348 N.E.2d 920 (1976); *see also Cotto,* 331 F.3d at 239. Delay of Bartley's arraignment was not advanced before the trial court as a basis for suppression of Bartley's confession or evidence secured pursuant to the consensual search. Given this omission, the argument was subject to New York procedural bar. *See People v. Jehle,* 181 A.D.2d 792, 793, 581 N.Y.S.2d 685 (2d Dept.1992); *People v. Silas,* 158 A.D.2d at 562, 551 N.Y.S.2d 330. The Appellate Division explicitly relied on this independent state procedural bar to reject Bartley's delay of arraignment theories. *Bartley,* 230 A.D.2d at 749, 646 N.Y.S.2d 361. Given these circumstances, and consistent with *Cotto* and *Lee,* we decline to address claims based on delay of arraignment.

■ Despite the New York courts' application of an independent and sufficient state procedural bar, Bartley, relying on *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), urges us to consider the merits of his delay of arraignment claims because, he alleges, failure to present them to the trial court in a timely fashion is attributable to inadequate representation and deference to the state courts' application of a procedural bar would result in real prejudice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Both the Appellate Division and the District Court found that delay of arraignment could not have provided grounds for suppression in this case. *Bartley,* 230 A.D.2d at 749, 646 N.Y.S.2d 361. We agree. Considering that 1) the confession and the consent to search were granted within the first twelve hours and seventeen hours of custody, respectively; 2) Bartley consented to subsequent delays; and 3) the purpose of the delay was not to secure probable cause for Bartley's arrest,[2] there

---

*Morgan v. Bennett,* 204 F.3d 360, 371 (2d Cir.2000)

**2.** We have no doubt that the signed statement of Travis James combined with the car chase, the discarded gun, the attempt to escape on foot, and Bartley's oral confession, all of which occurred within twelve hours of the arrest and before the first waiver of right to speedy arraignment, provided sufficient probable cause to arrest Bartley.

was no basis for suppression. *See United States v. Lainez–Leiva,* 129 F.3d 89, 92 (2d Cir.1997) *(per curiam ).* Counsel's failure to seek suppression on a theory that could not succeed as a matter of law did not constitute ineffective assistance, *see Strickland v. Washington,* 466 U.S. 668, 687–688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and no prejudice resulted.

Bartley's remaining claims for *habeas* relief allege Fifth Amendment violations based on the totality of the circumstances surrounding his confession and consent to search, including his age at the time of arrest, the duration of his interrogation, and isolation from his mother.[3] Confessions and consents to search must be voluntarily given. *Dickerson v. United States,* 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). The central question posed by Bartley's Fifth Amendment challenge is whether, given the totality of the circumstances, it is apparent that his "will was overborne" by the conduct of the police. *Reck v. Pate,* 367 U.S. 433, 440, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *see also Green v. Scully,* 850 F.2d 894, 901–02 (2d Cir.1988).

■ While Bartley was a minor at the time of the interrogation, he was seventeen years old and a senior in high school. There is no allegation that he suffered any mental deficits. *Compare Thomas v. North Carolina,* 447 F.2d 1320 (4th Cir. 1971) (confession given by 15 year old with fifth grade education and IQ of 72 after 9 hours of interrogation in the absence of counsel should have been suppressed). In

addition, at the time of the Sunrise Cinema shooting, Bartley was on probation from a prior armed robbery conviction. *See Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Further, the detectives in this case appear to have conducted themselves appropriately, giving Bartley *Miranda* warnings at least twice before he confessed and a third time before he signed the written confession and consent to search. *Scully,* 850 F.2d at 901–02. Given these facts, we hold that the state courts' findings were not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). *See Tankleff v. Senkowski,* 135 F.3d 235, 245 (2d Cir.1998) (interrogation of 17 year old suspect *without* providing proper *Miranda* warnings held not to be sufficiently coercive to require suppression of later, post-*Miranda,* confession).

We have considered petitioner's remaining arguments and find each of them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED. The motion to expand the certificate of appealability is DENIED.

■

---

3. As noted, the state alleges that these arguments were waived in the District Court or, in the alternative, that Bartley failed to exhaust them in the New York courts. Based on our review of the record, we do not agree. In any event, with respect to exhaustion, under 28 U.S.C. § 2254(b)(2) we may deny on the merits federal claims raised on *habeas* review even if they have not been exhausted in the state courts.