UNITED STATES of America

v.

Gary Manuel CHEYENNE.

No. CR76–5064.

United States District Court,
D. South Dakota.

Oct. 13, 1976.

---

William F. Clayton, U.S. Atty., Sioux Falls, S.D., for plaintiff.

Shelley M. Stump, Rapid City, S.D., R. Woodruff, Belle Fourche, S.D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

On June 6, 1976, Gary Manuel Cheyenne was arrested by law enforcement personnel from the Bureau of Indian Affairs in connection with an investigation of the death of one Kevin Hill. On June 7, 1976, an Information was filed charging the Defendant with a violation of 18 U.S.C. § 1111 and § 1153. Subsequently, the United States filed a Motion for Transfer to Adult Court pursuant to 18 U.S.C. § 5032. A transfer hearing was held on August 20, 1976, and on September 3, 1976, the Court granted the Government's Motion to Transfer to Adult Court. The findings of fact upon which the Court's Order of Transfer was based are set out in findings filed along with the Court's order for transfer filed September 3, 1976.

Prior to trial the counsel for the Defendant moved to suppress an allegedly incriminating statement given by the Defendant on June 6, 1976, to F.B.I. Agents George D. Haffner and Edmund Diem. The Defendant's first reason for urging suppression derives from the language of the last sentence of 18 U.S.C. § 5032 which states:

> Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions.

Defense counsel's position is that the words "prior to" mean literally what they say, *i.e.* any statement of a defendant made at *any* time prior to a transfer hearing is beyond the ambit of the evidence which the Government may seek to have admitted in a subsequent criminal proceeding. By this reasoning an order of transfer to adult court would operate in such fashion as to erase forever, for purposes of prosecution, any and every statement which a defendant made prior to the order of transfer with no regard for the question of whether the statement had any relationship to the transfer proceedings.

The Government has submitted a contrary theory as to the construction of 18 U.S.C. § 5032; namely, that the words "prior to" in the last sentence of said section

should be limited to a time frame created by inference from the purpose of the section relating to transfer hearings. In other words, "prior to" should *not* be construed to mean that the prohibition on the use of statements extends endlessly back from the order of transfer, but rather should be construed to mean that statement made prior to but in connection with a transfer hearing are the only concern of the time-defining phrase.

Thus, the question squarely presented is: whether the directive of 18 U.S.C. § 5032 prohibiting the admission of statements of a Defendant at criminal proceedings subsequent to a transfer hearing encompasses all statements made by the Defendant during all times prior to a one point in time (the end of the transfer hearing) or whether the prohibition extends only to statements made prior to but in connection with (presumably after initiation of) proceedings for transfer?

For the reasons hereinafter enumerated, the Court concludes that the Government's position reflects the only reasonable construction of the statute in question, and therefore holds that statements made by the Defendant prior to the commencement of transfer proceedings and having no connection with those proceedings, are admissible in subsequent criminal proceedings.

## I.

## CONSTRUCTION IN CONTEXT

It is fundamental that no word, phrase or sentence of a statute should be read in isolation and apart from the context in which it appears. Section 5032 is entitled "Delinquency proceedings in district courts; transfer for criminal prosecution." Even a casual reading of the section reveals clearly that the last five paragraphs deal primarily with the process of transfer from juvenile to adult proceedings. Analyzed more fully, the apparent purpose underlying the last five paragraphs of § 5032 is to articulate the following: (1) the circumstances under which a transfer from juvenile to adult proceedings can be made; (2) the procedures that must be followed to make such a transfer; and (3) consequences of a transfer. *See* 3 1974 U.S.Code Cong. and Admin.News pp. 5283, 5320.

The circumstances under which transfer can be made are limited to either the circumstance in which the defense asks for a transfer or the circumstance in which a juvenile charged is over 16 years of age and the alleged crime carries a maximum penalty of ten (10) years imprisonment or worse. The procedures for transfer are well-defined and require rather extensive findings some of which cannot ordinarily be made by a Court without assistance from psychiatrists or psychologists.

Upon reflection it becomes plain that a good faith fact-finding effort that must precede a transfer may and probably will in most cases tend to probe into information touching on the merits of the case. For example, an inquiry into intellectual development and psychological maturity, as mandated by the statute, could require questioning that would elicit responses pertinent to the state of mind of the defendant at the time of the alleged crime.

To admit such responses (statements) at a later criminal prosecution would not only be fundamentally unfair, it would ultimately thwart all efforts of fact-finding in connection with a transfer hearing. No sensible counsel would advise a client to cooperate with examining psychologist, etc. when responses elicited could likely lead to conviction at a later time. Hence, the structure of this section on transfers necessitates that there be some statutory protection that surrounds statements given in connection with the fact-finding which is a prerequisite for a transfer order. In this Court's view the sentence in question embodies that protection.

To read and construe the stated consequences of a transfer apart from prior discussion relating to other contents of the section (*e.g.* procedures for transfer) is to tear the stated consequences from context; this ought not be done. Read in context, we think it is most reasonable that a consequence of transfer (no admission of state-

ments at subsequent criminal proceedings) be construed in the context of the prior paragraphs relating to the transfer proceedings. Therefore, the "prior to" language is limited by the time frame implicit in the entire section; specifically, the time frame created by the concentration upon the transfer hearing. "Prior to" indeed means "before" but implicitly means, in this context, "having some relation to" the transfer hearing. In sum, this Court thinks that an integrated reading of 18 U.S.C. § 5032 does not yield a conclusion that compels the suppression of a defendant's statement prior to the commencement of transfer proceedings and having no relation to those proceedings.

## II.

### REASONABLE v. UNREASONABLE CONSTRUCTION

■ From time to time Courts are faced with a statute which is ambiguous on its face and could by syntax yield alternative constructions. It is fundamental that when one alternative would be reasonable and the other alternative unreasonable, the reasonable construction ought to be chosen. We think that the construction urged by the defense would result in an unreasonable holding; namely, that under all conceivable circumstances the prosecution would be unable to use any statements of the juvenile made prior to the transfer. A statement made during or immediately after the commission of a crime would be, as a matter of law, cast aside the same as a statement made during a transfer hearing.

Upon a motion for a transfer hearing the juvenile would be put in the enviable position of being freed from the power of any inculpatory statements made up to the decision on the transfer motion whether the transfer was finally made or not. Meanwhile, a juvenile for whom transfer was never considered would bear the risk of his inculpatory statements being used in juvenile proceedings.

Thus, a transfer motion by the Government and subsequent hearing could become a lucky break by which one juvenile would be freed from his past statements that could convict him; another juvenile in the same circumstance could be so unfortunate as to endure juvenile proceedings wherein *his* statements were admissible [1] and sufficient for a finding of guilt. The irrationality appears obvious, and this Court rejects a construction of the law that advances the irrational application of 18 U.S.C. § 5032.

## III.

### PROCEDURAL SAFEGUARDS

■ The admission of inculpatory statements made by juveniles is surrounded with the same procedural safeguards as surround the admission of similar statements made by adults. This law derives from the landmark case, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), wherein the Supreme Court held that a juvenile proceeding was essentially a criminal proceeding; hence, a juvenile was entitled to the same procedural safeguards afforded adults in criminal prosecutions. This position has repeatedly been reaffirmed. *E.g. In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1974).

Therefore, cases [2] prior to *In re Gault*, holding that evidence educed at or before a juvenile (non-criminal) proceeding was inadmissible in subsequent criminal proceedings, are inapposite. Having taken a new view of juvenile proceedings in 1967, the high court started an evolution of law in regard to juvenile proceedings that is continuing even today. The thrust of that law

---

1. Existing law permits in juvenile cases, as in adult cases, the introduction of admissions or confessions of a juvenile prior to trial if the *Miranda* requirements are satisfied. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966); *United States v. Ramsey*, 367 F.Supp. 1307 (W.D.Mo.1973).

2. *United States v. Smith*, 31 F.R.D. 553 (D.D.C. 1962), and *Harling v. United States*, 111 U.S. App.D.C. 174, 295 F.2d 161 (1961).

**964**

is the extension of constitutional rights to juveniles; and that growth in the law necessarily changes the relationship of juvenile to adult proceedings.

In summary, the Court concludes that commonly accepted principles of statutory construction, as well as the constitutional safeguards granted to juveniles prior to a transfer, combine to compel the conclusion that statements of the Defendant to F.B.I. agents in this instance should be admissible if found to be voluntary according to the legally established criteria.

The foregoing shall constitute this Court's findings of fact and conclusions of law.