**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Lester Blaine SPRUILLE,
Defendant-Appellee.**

**No. 76–1660.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1976.

Decided Oct. 26, 1976.

Samuel K. Skinner, U. S. Atty., Thomas A. Mauet, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Richard C. Moenning, Chicago, Ill., for defendant-appellee.

Before SPRECHER and WOOD, Circuit Judges, and WOLLENBERG, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The Government brings this interlocutory appeal from the order of the district court allowing the defendant's motion to suppress certain statements made by the defendant to agents of the Federal Bureau of Investigation prior to a transfer hearing under Title 18 U.S.C. § 5032.

The facts surrounding the statements in issue are not in dispute. The defendant, 17 years of age, was charged in a one count indictment returned on May 25, 1976, with the murder by stabbing of Walter Turner, Jr., on April 6, 1975, at the Veterans' Administration Hospital of North Chicago. The hospital is under the exclusive jurisdiction of the United States.

Prior to the indictment special agents of the FBI interviewed the defendant on April 9, 10 and 12, 1976. Two interviews occurred on April 9 at the defendant's home. The first interview was conducted in the presence of the defendant's mother, and the second, which was at defendant's request, was conducted in the presence of both his father and mother. On each occasion the defendant was given *Miranda*[1] warnings and executed a waiver of rights form. The interview on April 10 was a phone call made by the defendant to the office of the FBI. The April 12 interview was conducted in the presence of the defendant's mother at the office of the FBI where the defendant voluntarily appeared. Again he was given *Miranda* warnings and executed a waiver of rights form. These statements

---

* Senior District Judge Albert Charles Wollenberg of the United States District for the Northern District of California is sitting by designation.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

cannot be characterized as confessions, but they evidence a relationship between the defendant and the scene of the crime. The voluntariness of these statements is not at issue here.

On April 13, 1976, the defendant was arrested upon a magistrate's warrant after which the Government filed a motion to transfer to the district court pursuant to 18 U.S.C. § 5032.[2] After a hearing on May 6, 1976, the district court entered an order on May 7, 1976, permitting the Government to proceed against the defendant as an adult. The indictment followed. The defendant then moved to suppress the statements made by him prior to the transfer hearing based upon Title 18 U.S.C. § 5032, which concludes with this paragraph:

> Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions.

Faced with this seemingly broad statutory language, the district court in a Memorandum Order held that since the defendant was a juvenile at the time of the statements, the statements were excludable under § 5032.

The purpose of the statute, the court reasoned, was to protect a youthful offender against improvident or ill advised statements regardless of compliance with *Miranda*. In the view of the district court the "statute has no provision for allowing these statements to be used under any circumstances."

The Government argues that it would be an unreasonable interpretation of the statute to conclude that Congress intended that statements made by a juvenile to law enforcement personnel shortly after the commission of a crime could not be used in subsequent criminal proceedings. To support this view the Government points to the significant changes occasioned by *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), which rejected the previous concept that juvenile proceedings were analogous to civil actions and held that such proceedings were essentially criminal in nature. Thereafter, in 1974, § 5032 was amended and among other changes the last paragraph now in question was added. Senator Bayh, the principal proponent of the bill, explained in the Senate that this amendment would provide basic procedural rights for juveniles who came under federal jurisdiction and would bring federal procedures up to the standards set by various model acts, state codes and court decisions.[3] The Government argues that this legislative history indicates that Congress intended only to bring federal procedures up to date.

Neither party disputes § 5032 insofar as it clearly prohibits the admissibility of statements made by a juvenile "during" a transfer hearing. The only issue here relates to the scope and meaning of that portion of § 5032 which prohibits the admissibility of statements made "prior to" a transfer hearing. The Government therefore argues that the paragraph in question

---

**2.** 18 U.S.C. § 5032 provides in material part:

A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.

\* \* \* \* \* \*

A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be

proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.

**3.** 120 Cong.Rec. 16995 (1974) (remarks of Senator Bayh).

should be read only to exclude statements made by a juvenile to court related personnel in connection with a transfer hearing, whether it be "before" or "during" the transfer hearing. Other statements for other purposes were not intended to be excluded, the Government argues. In a transfer hearing § 5032 provides that evidence of certain factors should be considered, including "age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; and the nature of past treatment efforts and the juvenile's response to such efforts . . . ." In these circumstances the Government contends that the statement protection is necessary to assure candid answers from the juvenile to court or court related personnel in relation to the transfer hearing. This construction is pointed out as being consistent with Fed.R.Crim.P. 12.2(c) prohibiting the use of statements made by an accused in the course of a psychiatric examination. Further, the Government argues that if the interpretation of the district court is adopted, it must follow that all other juvenile statements made in a case where there is no transfer hearing are outside the statutory prohibition and are therefore admissible.

Defendant supports the district court's holding on the basis of what it labels the "clear unambiguous language of Section 5032," the purpose of which "is to protect a juvenile against his improvident and ill advised statements, whether voluntary or involuntary."

We cannot agree. Part of the last paragraph of § 5032 is ambiguous. If it was intended to prohibit the use of *"all"* juvenile statements made at any time for any purpose, without regard to a transfer hearing, it could have been so stated. If it was intended to prohibit *"only"* those statements made in "conjunction with" or "related to" a transfer hearing, whether before or during the transfer hearing, it also could have been so stated. Since neither was clearly stated, the courts must seek to de-termine which construction will best serve the intended purposes of the statute. *Allis-Chalmers Mfg. Co. v. Gulf & Western Industries*, 527 F.2d 335 (7th Cir. 1975), *cert. denied*, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338. In these circumstances the district court's resolution of the ambiguity by a broad interpretation cannot be criticized, we only differ with it. Statutory construction is at best an imperfect science. *Palmore v. Superior Court of District of Columbia*, 169 U.S.App.D.C. 323, 515 F.2d 1294 (1975), *cert. granted* 424 U.S. 907, 96 S.Ct. 1101, 47 L.Ed.2d 311 (1976). The ambiguity requires a search for the congressional purpose. *Int. Tel. and Tel. Corp. v. Gen. Telephone and Electronics Corp.*, 518 F.2d 913 (9th Cir. 1975).

Although nothing can be found to directly interpret the last paragraph of § 5032 one way or the other, our reading of the act as a whole and review of its legislative history lends little support to the interpretation that the statute was intended to make all statements of a juvenile "prior to" a transfer hearing inadmissible without regard to the nature or purpose of the statements and their relationship, if any, to a transfer hearing. Nor can we find consideration of this particular issue in any other circuit.

The Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.*, as amended in 1974, provides updated criminal procedures for juveniles. It does not purport to enact new rules of evidence for juvenile cases. We doubt that such a basic change in the rules of evidence as the adoption of so broad an exclusionary rule would have been intended without some consideration by the legislature of the need and justification for such a significant change. None appears.

As background for its actions the Congress took note that juveniles under age 18 are responsible for 23% of the violent crimes, and for 45% of all serious crimes. It was also noted that juvenile arrests for violent crimes increased 216% over the past decade and that juvenile arrests for violent crimes are increasing three times faster than adult arrests. It was also stated that

assistance must be given to police, court and correctional agencies, together with community resources, in their efforts to control and reduce crimes committed by juveniles. It is evident in the legislative history that the Congress believed it "is essential that greater attention be given to serious youth crimes" and that "such youths are appropriate clients for the formal process of the juvenile justice system." Also, "an unknown number of children and youth," it is said, "present a threat to the community and need the type of social control afforded by the formal procedures of the juvenile justice system. . . ."[4] Nothing is found in that history on the matter, for instance, of any improper treatment of children to secure statements, or other comments suggesting the complete unreliability of juvenile statements for police or court purposes. With these considerations as background, we doubt that Congress, since the legislative history reveals no consideration of the necessity for such a significant change, would have intended to so drastically curtail the usefulness of a customary police investigatory process ordinarily of value during trial.

The controversial paragraph is found in a section of the statute outlining the procedures for transfer of a juvenile for prosecution as an adult after consideration of a number of factors, such as the social background, intellectual development and psychological maturity of the juvenile. These and the other factors set forth in that same section are factors that require consideration prior to even the filing of a motion to transfer in order to help determine whether or not a motion to transfer should be filed seeking the court's evaluation of these factors. The juvenile's cooperation is needed at this stage, but that cannot be expected if that cooperation in relation to these and similar factors can then be used against the juvenile in any criminal trial that follows. There is both the need and the reason for prohibiting statements "prior to" which are in connection with or related to the transfer

hearing. No need or reason was suggested in the legislative history or can otherwise be found justifying an extension of the prohibition beyond that. Such a safeguard under somewhat similar circumstances is not novel. Fed.R.Crim.P. 12.2(c)

The courts have long been aware of and sympathetic to the special considerations required to be given to statements of juveniles because they may be easily confused and bewildered, open to suggestion, frightened, too trusting, or misled so as to cast doubt on the reliability of their statements. *Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948). The intent of Congress appears to have been to update federal juvenile procedures. No fault was found with the treatment of juveniles by federal courts. It was specifically noted in the legislative history that six years had passed since *In Re Gault* without the Juvenile Delinquency Act being amended to reflect the changes mandated by *Gault*. *Gault* does not prohibit the use of a defendant juvenile's statements. At 387 U.S. 55, at 87 S.Ct. 1458 the problem is discussed:

We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.

4. S.Rep. No. 93–1011, 93 Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, pp. 5279, 5290.

The Court thus anticipates the guarded use of a juvenile's statements in the event of a voluntary admission meeting other criteria, and does not call for their complete prohibition. Nothing can be found suggesting that Congress intended to go beyond this except with respect to statements related to a transfer hearing.

The broad interpretation would prohibit the government from using such prior statements unrelated to transfer even to impeach during cross-examination if the juvenile chose to testify contrary to his prior statements. No reason can be found to prohibit such use when the juvenile is in court under the supervision of the judge. Being unable to ask the juvenile to explain any discrepancies would not aid the search for truth. Likewise, the juvenile's own use of his prior statement that might be of assistance to him at trial, and otherwise admissible under some circumstances, is also foreclosed by this broad interpretation.

Another result is that in those cases where no transfer is considered or sought the statements of the juvenile then involved, not being "prior to" any transfer hearing, would not be limited by this statute. Such juveniles may often be the more immature juveniles who would thus have to answer to their prior statements, while the more mature juvenile charged with the more serious crime would be protected. Such incongruous results could not have been intended by Congress. We believe that where the statute is subject to varying construction it is the role of the court to determine which construction best serves the intended purposes of the Act. *Allis-Chalmers Mfg. Co. v. Gulf and Western Industries, Inc., supra.* In *United States v. Rosenblum Truck Lines*, 315 U.S. 50, 55, 62 S.Ct. 445, 449, 86 L.Ed. 671 (1942), the Court stated:

> Where the plain meaning of words used in a statute produces an unreasonable result, "plainly at variance with the policy of the legislation as a whole," we may follow the purpose of the statute rather than the lettered words.

We believe the narrower construction best serves the purposes of the Act. The broad interpretation would instead result in the thwarting of efforts to detect and control juvenile crime.

It is our view that the defendant's statements, although "prior to" the transfer hearing, were not in any way related to or in connection with the transfer hearing, and, therefore, their admissibility is not prohibited by § 5032. As to any other considerations required to determine admissibility we express no opinion.

We reverse.