UNITED STATES of America, Appellee,

v.

Gary Manuel CHEYENNE, Appellant.

No. 77–1025.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1977.

Decided July 26, 1977.

R. N. Woodruff, Belle Fourche, S. D., for appellant.

Brian D. Haag, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; William F. Clayton (former U. S. Atty.), Thomas A. Lloyd, on brief.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

In a jury trial, defendant Gary Cheyenne was convicted of second degree murder and sentenced to fifteen years. He raises a number of evidentiary and procedural issues on this appeal. We find them all without merit and affirm his conviction.

Cheyenne does not argue that the evidence is insufficient to support the conviction, but a brief statement of the facts and a review of the preliminary proceedings in

this case will bring the legal issues into sharper focus. The facts are to be viewed in the light most favorable to the Government as the prevailing party. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). On June 4, 1976, Cheyenne, then 17 years old, was a passenger in an automobile that picked up a hitchhiker, Kevin Hill. Cheyenne, Hill and other occupants in the vehicle travelled to Oglala, South Dakota, which is on the Pine Ridge Indian Reservation. At a baseball field in Oglala, all of the individuals except Cheyenne began to "huff" paint, a method of achieving an hallucinogenic "high" by spraying paint into a plastic bag and sniffing it. The evidence as to what transpired on the baseball field is contradictory, but it is clear that a minor altercation occurred between Cheyenne and Hill, who possessed a knife.

Hill eventually indicated that he wanted to continue hitchhiking. Hill started to walk away from the baseball field and then sat down in the middle of the road to rest or, as one witness testified, to pray. There was some discussion about fighting Hill and getting his money. As Hill sat with his back toward the group, Cheyenne approached Hill with a post and struck him in the head. Cheyenne hit Hill two more times in the head as Hill lay on the ground, knocking him unconscious. Cheyenne then took the knife from Hill's pocket and stabbed Hill numerous times, causing his death.[1]

The body was found two days later and Cheyenne was taken into custody. In an interview with FBI Agent George Hafner, Cheyenne confessed to Hill's murder. On June 7, 1976, the United States Attorney filed an information charging Cheyenne with juvenile delinquency for committing the murder. Three weeks later, Cheyenne consented to inpatient psychiatric and psychological observation and was transferred to the Federal Youth Corrections Center in Englewood, Colorado. After Cheyenne's return from Englewood, the District Court[2] conducted a transfer hearing pursuant to the Government's motion to transfer Cheyenne from juvenile court to adult court under 18 U.S.C. § 5032. The District Court granted the motion to transfer and an indictment was filed charging Cheyenne with first degree murder. At the resulting trial Cheyenne was convicted of second degree murder.

I

Cheyenne's initial argument on appeal contests the manner in which the Government was allowed to relate the substance of Cheyenne's confession to the jury. In the post-arrest interview with FBI Agent Hafner where Cheyenne confessed to killing Hill and detailed the circumstances of the murder, Agent Hafner took handwritten notes. Those notes were dictated three days later to a secretary and incorporated into a "302" report. Hafner checked the report with the notes and then the notes were destroyed. This "302" report, which is the essence of Cheyenne's confession, is the only written record of the interview with Cheyenne.

In a pretrial hearing on a defense motion to suppress the post-arrest statements of Cheyenne, Agent Hafner was called as a Government witness. When asked to relate the substance of his interview with Cheyenne, Agent Hafner stated that he had no independent recollection of the interview and would have to refresh his memory by consulting the "302" report. The District Court allowed him to refresh his recollection and Agent Hafner proceeded to testify as to the details of Cheyenne's confession. Based on the evidence adduced at the hearing, the District Court overruled Cheyenne's motion to suppress.

On the day following the suppression hearing, Cheyenne's murder trial commenced and Agent Hafner was called as a

---

1. The autopsy revealed a total of 19 stab wounds, the fatal one being a stab wound to the heart.

2. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

Government witness. Before the jury, Agent Hafner again recounted in narrative form the details of Cheyenne's confession. He did not ask to refresh his memory by reviewing the "302" report, nor is there any indication that the report was even in the courtroom while Agent Hafner was testifying. However, it is clear that Agent Hafner's testimony relating to Cheyenne's confession is striking similar, in both content and sequence, to the "302" report.

Cheyenne's counsel did not immediately object to this portion of Agent Hafner's testimony. But at the conclusion of the Government's case, counsel moved to strike Agent Hafner's testimony, arguing that it was "practically verbatim" from the "302" report and that Hafner had no present recollection of the actual confession. The District Court denied the motion.

On appeal, Cheyenne renews this argument. He relies on judicial authority holding that a witness, under the guise of refreshing recollection, can not place before the jury a document that has no independent basis for admission in evidence. In his brief, Cheyenne argues that Agent Hafner used the device of refreshed recollection as a subterfuge to place before the jury an allegedly inadmissible document, the "302" report.[3] This argument has no application to this case. At trial, Agent Hafner did not express a need to refresh his recollection or to study the "302" report. Unlike *Goings v. United States*, 377 F.2d 753 (8th Cir. 1967), a case cited extensively by Cheyenne, the Government counsel here did not read the contents of a document aloud before the jury under the pretext of refreshing the witness's memory. Hafner merely testified from his memory, which was refreshed at the suppression hearing.

Cheyenne also argues that the District Court should have stricken the testimony of Agent Hafner relating to the confession because Agent Hafner possessed no independent recollection of the details of Cheyenne's confession. Rather, Cheyenne contends, Agent Hafner memorized the "302" report and simply recited the entire contents of the document before the jury. While this argument may have merit in some contexts, the factual premise is lacking and we find no error under the facts of this case.

Because Cheyenne's counsel did not tender a timely objection to Agent Hafner's testimony on this ground, the District Court was unable to ascertain the extent of Agent Hafner's independent recollection of Cheyenne's confession. *See United States v. Riccardi*, 174 F.2d 883, 889 (3rd Cir.) *cert. denied*, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). However, the record shows that Agent Hafner testified in detail as to the events surrounding the crime and Cheyenne's confession. Agent Hafner answered all questions of Cheyenne's counsel responsively and candidly on cross-examination and at no time did Agent Hafner state that he lacked the recollection to answer an inquiry of counsel.

The "302" report that Agent Hafner allegedly memorized is relatively short, extending slightly over two pages. Agent Hafner was allowed to refresh his memory with this report during his testimony at the suppression hearing. It is also reasonable to infer that he may have refreshed his memory by reviewing the report before his trial testimony, an entirely appropriate procedure. *See* Fed.R.Ev. 612; 10 J. Moore & H. Bendix, *Moore's Federal Practice* § 612.-02 (1976). Cheyenne's counsel received a copy of the "302" report before trial and, in his cross-examination, was given full opportunity to probe Agent Hafner's capacity for recollection and perception. During cross-examination, counsel attempted on many occasions to impeach Agent Hafner by showing that Hafner's recollection of the details of Cheyenne's confession was hazy because, at the suppression hearing, he had to review the "302" report to refresh his

---

**3.** The Government argues that the "302" report could have been admitted as a recorded recollection under Fed.R.Ev. 803(5). We need not address this argument. The "302" report was never offered in evidence and there was, therefore, no attempt to lay the proper foundation for its admission at trial.

memory. The weight of Hafner's testimony was for the jury's determination.

We conclude that the manner in which Agent Hafner testified did not inject reversible error into the case. This entire argument can be reduced to a question of credibility and the jurors, considering Hafner's direct testimony and Cheyenne's impeachment efforts, were allowed to accord the testimony any weight they desired. We do not invade this province of the jury, nor do we second-guess its assessment of credibility. The District Court did not err in refusing to strike Agent Hafner's testimony.

## II

■ Cheyenne contends that the District Court erred in failing to give a self-defense instruction to the jury. Cheyenne cites to portions of the record that show Hill "acted kind of mean", bragged about his knowledge of karate and kung fu, possessed a knife and acted belligerently toward Cheyenne and others. These facts, Cheyenne argues, may have convinced the jury that he was acting in self-defense had this issue been included in the court's instructions.

At trial, Cheyenne's counsel did not object to the failure of the District Court to give a self-defense instruction. Such an objection is required by Fed.R.Crim.P. 30 and its absence severely restricts the scope of our review. Cheyenne's conviction can be reversed on this basis only if we find that the District Court's action constitutes plain error. *See United States v. Cole*, 453 F.2d 902, 907 (8th Cir.), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972). We must ascertain whether Cheyenne's rights were substantially affected to the extent that our failure to rectify the error would perpetrate a miscarriage of justice. *Chubet v. United States (Kauffmann)*, 414 F.2d 1018, 1021 (8th Cir. 1969).

Cheyenne falls far short of establishing plain error. His argument essentially ignores the actual circumstances surrounding the murder. Just before his death, Hill had decided to resume hitchhiking and left the "huffing" party. He was followed by Cheyenne and others, who had discussed fighting Hill and taking his money. As Hill sat in the middle of the road with his back to Cheyenne, he was approached by Cheyenne who struck him in the head with a post and stabbed him 19 times. We perceive no evidence in the record that would even justify, let alone mandate a self-defense instruction.

## III

■ The last paragraph of 18 U.S.C. § 5032 provides:

> Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions.

Cheyenne, according a literal interpretation to this provision, argues that any type of statement or confession made by a juvenile before the transfer hearing can not be admitted in any subsequent criminal prosecution. Since Cheyenne's confession to Agent Hafner clearly occurred "prior to" Cheyenne's transfer hearing, it is argued that the confession should not have been admitted at his "subsequent criminal prosecution", the murder trial. The District Court rejected Cheyenne's broad construction of § 5032 and ruled that the statute does not bar admission of all statements made by a juvenile prior to the transfer hearing; only those pre-hearing statements that have some relation to the hearing itself are inadmissible. *United States v. Cheyenne*, 420 F.Supp. 960 (D.S.D.1976). On appeal, Cheyenne challenges the District Court's interpretation of § 5032.

Subsequent to the District Court's ruling on this point, the Seventh Circuit in *United States v. Spruille*, 544 F.2d 303 (7th Cir. 1976), adopted a similar construction of § 5032. The Court in *Spruille* concluded that the legislative history of § 5032 supports the view that statements of a juvenile made prior to the transfer hearing are inadmissible only if they are related to or connected with the hearing. We agree with that interpretation. A blanket prohibition

against the admission of all statements made prior to the transfer hearing would seriously impede the investigation of juvenile crime and the successful prosecution of dangerous juvenile offenders tried as adults. A juvenile who confessed to his crime contemporaneous with his arrest would escape the consequences of his confession if the Government believed the crime to be so serious and the juvenile so intractable that a transfer to adult court was justified. Other juveniles, whose offenses and previous juvenile records did not warrant the drastic step of transfer, would be bound by their confessions merely because the Government did not pursue a transfer hearing. We agree with *Spruille* and the District Court that Congress did not intend such an unreasonable result.

It is clear that Cheyenne's confession was wholly unrelated to the transfer hearing. It was made immediately after the arrest and before Cheyenne was charged by information with being a juvenile delinquent. Applying our construction of § 5032, we conclude that the District Court properly ruled that the confession was admissible at Cheyenne's murder trial.

### IV

■ The penultimate paragraph of § 5032 provides:

> Once a juvenile has entered a plea of guilty or the proceeding has reached the stage that evidence has begun to be taken with respect to a crime or an alleged act of juvenile delinquency subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred.

Cheyenne, relying solely on ingenuity because of the lack of supportive judicial authority, argues that the Government violated the above provision and that the District Court erred in not dismissing the murder charge against him. In the transfer hearing, Cheyenne notes, the Government presented evidence of Hill's murder and Cheyenne's involvement in the murder. Cheyenne argues that, at the time of the transfer hearing, "the proceedings ha[d]

reached the stage that evidence ha[d] begun to be taken with respect to a crime or an alleged act of juvenile delinquency" by Cheyenne. Cheyenne concludes that, since this stage had been reached at the time of the transfer hearing, all subsequent proceedings were barred, including his adult murder trial.

This argument overlooks the nature and function of a transfer hearing. In determining whether or not to transfer a juvenile to adult court, the District Court must consider a number of factors listed in § 5032. One of these identified factors is the "nature of the alleged offense" committed by the juvenile. At Cheyenne's transfer hearing, the Government offered general testimony concerning the condition of Hill's body and the cause of death. The court was then simply informed that Cheyenne was implicated in the matter. To rule that evidence of this type in a transfer hearing precludes all subsequent adult prosecutions would subvert the entire transfer procedure. We reject Cheyenne's argument that the taking of this evidence at the transfer hearing barred his subsequent murder trial.

### V

■ Cheyenne contends that he was denied his right to a speedy trial under 18 U.S.C. § 5036. That provision requires an alleged delinquent who is in detention to be brought to trial within 30 days from the date his detention began. If not brought to trial in that time, the information must be dismissed unless the Government shows that the additional delay was caused by or consented to by the juvenile and his counsel, or would be in the interest of justice.

Cheyenne was arrested and incarcerated on June 6, 1976. On June 29, 1976, Cheyenne consented to an inpatient study at the Federal Youth Correction Center in Englewood, Colorado, and the District Court ordered the transfer to Englewood. On August 9, 1976, the District Court ordered Cheyenne returned from Englewood and on August 13, 1976, Cheyenne was released on bail. Cheyenne therefore was incarcerated

908

against his will for 24 days before he consented to be transferred to Englewood and five days after his return, for a total of 29 days of unconsented incarceration. We have reviewed the record and Cheyenne's arguments and agree with the District Court that Cheyenne was not denied his right to a speedy trial.

## VI

■ Cheyenne argues that the closing argument of Government counsel was factually misleading and prejudicial. The District Court admonished the jurors that their verdict must rest upon their own recollection of the facts. We have reviewed the closing argument in light of Cheyenne's objections and find that it was not improper or inflammatory.

■ Finally, Cheyenne complains about the admission in evidence of a jacket and shirt found in a duffel bag near Hill's body. It is argued that these items were not material or relevant and were admitted without a proper foundation. It is difficult to conceive of how the admission of these items prejudiced Cheyenne in light of the overwhelming evidence of guilt. We conclude that the District Court did not abuse its discretion in admitting these items. *See* Fed.R.Ev. 103(a).

Cheyenne was convicted of committing a brutal crime when he was only 17 years old. We have extensively reviewed the record to assure ourselves that he received a trial that was fair and free of legal error. We are convinced that Cheyenne received such a trial. The judgment of conviction is affirmed.