**UNITED STATES of America,
Appellee,**

v.

**Charles J. GLOVER, Appellant.
No. 302, Docket 30701.**

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1967.

Decided Jan. 27, 1967.

Joshua N. Koplovitz, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Frank M. Tuerkheimer, Asst. U. S. Atty., So. District of New York (Robert M. Morgenthau, U. S. Atty., and John S. Allee, Asst. U. S. Atty., on the brief), for appellee.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Charles J. Glover appeals from a finding and commitment for juvenile delinquency in the United States District Court for the Southern District of New York, Thomas F. Murphy, Judge. Appellant was charged in a one count information with juvenile delinquency by passing a forged and altered money order, knowing a material signature or endorsement thereon to be false. Appellant was found a juvenile delinquent and committed to the custody of the Attorney General for the duration of his minority. On appeal, Glover asserts that a statement taken from him and placed in evidence was inadmissible and that the evidence was insufficient to warrant conviction. We hold the statement inadmissible and reverse and remand for new trial.

Appellant was arrested at 6:00 p. m. by New York City police and spent the night in the juvenile unit of the Federal House of Detention. At 9:00 a. m. the following morning, he was brought before Postal Inspector David Silbert, at the office of Silbert, who advised him that he need not make a statement, that if he

made a statement it could be used against him and that he was entitled to counsel. Glover proceeded to make a statement which was recorded by 9:20. He was then brought to the United States Courthouse by 10:00 and went before the United States Commissioner for arraignment between 10:30 and 11:00.

The circumstances of the offense testified to at trial were that at about 6:00 p. m. on March 1, 1966, Glover, then 17 years of age, entered a check cashing store on West 44th Street, Manhattan, to cash a $90 U. S. Postal Money Order, payable to one Fellows. When presented for cashing, the money order bore Fellows' name and that of Donald Long on the back. Langholtz, the proprietor of the store, asked for identification, whereupon Glover produced a Social Security Card and a Selective Service Registration Card, both in Fellows' name. Langholtz found that the money order was on a list of stolen money orders, and locked the front door by remote control. When Glover tried to leave, Langholtz held him at gunpoint until police, summoned by Langholtz, arrived. Before the police arrived Glover told Langholtz that another person was with him and was 200 or 300 feet from the store.

In the statement taken from Glover at at the office of the Postal Inspectors,[1] Glover admitted knowing that Fellows had signed the name of Long on the back of the order. The statement was admitted in evidence as Exhibit 5 over objection that it was obtained during an unreasonable delay in arraignment. In testimony on trial Glover stated that the first time he discovered that Fellows had signed Long's name was after arrest when he compared the color of the ink in Long's name with the color of ink in a pen Fellows had given Glover. The version in the written statement was obvi-

1. "I, CHARLES J. GLOVER, first being duly sworn, depose and say:

"I have been informed of my Constitutional rights in that I need not make any statement, and that any statement I do make could be used against me in any court of law. I have also been informed that I am entitled to legal counsel. I make the following statement of my own free will, without threat or promise of leniency.

"I am 17 years of age and was born in Jersey City, New Jersey on May 30, 1948. I am single and live at the Hotel Hadson, Room 531, having been there for about 30 days. I am employed at a newsstand on weekends, only, at Seventh Avenue and 43rd Street near the Paramount Theatre. I have no other source of income. I am now shown a U. S. Postal Money Order No. 438,682,937, payable to Robert J. Fellows, from Donald R. Long, 486 Kimble St., Manchester, N. H., dated February 7, 1966, in the amount of $90.00. I wish to make the following statement. I am acquainted with a fellow name [sic] Robert Fellows for about a year. I know him through meeting him in various bars in the theatre district, New York, N. Y. Specifically, I meet him in the Playland Amusement Hall between 43rd and 42nd Street on Broadway. He hangs out in Bickfords on 47th Street between Eighth and Broadway. I also see him in Whalens on Eighth Avenue.

"At about 5.30 P.M., on March 1, 1966, I again met him in Playland. I spent about a half hour with him and then he asked me to do him a favor. He gave me the above described money order and requested that I cash it for him. He offered me nothing for this service. He said he had received it from someone and wanted me to cash it. He did not offer any explanation as to why he wouldn't cash it. I told him that I could not identify myself personally and could not help. He therefore offered me four pieces of identification, all belonging to him as follows: A selective service registration certificate, a social security card, a certificate of birth, Manchester, New Hampshire and a plain white identification card. I now agreed to negotiate the order for him. We walked up through the Port Authority building on 41st Street and Eighth Avenue, where on the back of the money order he signed the name, Donald R. Long with a pen he had previously bought. The order already bore the endorsement, Robert J. Fellows. We now walked to a check cashing agency on 44th Street, slightly west of Eight [sic] Avenue where I entered the store and he waited outside. The check cashier accepted the money order and requested identification. I handed him the social security card and selective service registration certificate. The check cashier detained me for the police at this time."

ously material to proof of Glover's knowledge that Long's signature was false, a material element of the crime charged. Indeed, when the Court questioned whether all elements of the crime had been established, the government argued that the element of knowledge was provided by the statement in Exhibit 5 that Glover had in effect seen Fellows sign Long's name.

■ Appellant attacks the admissibility of the statement on two grounds, that it was obtained in violation of a section of the Juvenile Delinquency Act, 18 U.S. C. § 5035,[2] and of Rule 5(a) of the Federal Rules of Criminal Procedure[3] (the McNabb-Mallory rule). We find it unnecessary to determine whether there was a violation of Rule 5(a),[4] since we hold that there was clearly a violation of the Juvenile Act.

Section 5035 evidences a strong Congressional concern with the protection of the rights of juveniles. Unless the juvenile is taken *"forthwith"* before a committing magistrate, detention shall not "be for a longer period than is *necessary* to produce the juvenile before a committing magistrate." (Emphasis supplied.) There is here no hint of any purpose to allow detention for any other objective than prompt arraignment, before a judicial officer, so that the magistrate may explain and protect the juvenile's rights—among others, the right against compulsory self-incrimination and the right to the assistance of counsel. The Act makes plain the concern of the

2. 18 U.S.C. § 5035—Arrest, detention and bail

Whenever a juvenile is arrested for an alleged violation of any law of the United States, the arresting officer shall immediately notify the Attorney General.

If the juvenile is not forthwith taken before a committing magistrate, he may be detained in such juvenile home or other suitable place of detention as the Attorney General may designate for such purposes, but shall not be detained in a jail or similar place of detention, unless, in the opinion of the arresting officer, such detention is necessary to secure the custody of the juvenile, or to insure his safety or that of others.

In no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate.

The committing magistrate may release the juvenile on bail, upon his own recognizance or that of some responsible person, or in default of bail may commit him to the custody of the United States marshal, who shall lodge him in such juvenile home or other suitable place of detention as the Attorney General may designate for that purpose.

The juvenile shall not be committed to a jail or other similar institution, unless in the opinion of the marshal it appears that such commitment is necessary to secure the custody of the juvenile or to insure his safety or that of others.

A juvenile detained in a jail or similar institution shall be held in custody in a room or other place apart from adults if facilities for such segregation are available.

3. Rule 5. Proceedings Before the Commissioner

(a) Appearance Before the Commissioner.

An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

4. This court has held in cases involving Rule 5(a) that immediate arraignment is not required, but that a person may be detained for a reasonable, short period of time for purposes of interrogation. United States v. Vita, 294 F.2d 524 (2d Cir. 1961) (interrogation prior to arrest); United States v. Ladson, 294 F.2d 535 (2d Cir. 1961) (alternate ground), cert. denied 369 U.S. 824, 82 S.Ct. 840, 7 L. Ed.2d 789 (1962). But such interrogation must be for investigatory purposes, and not to obtain a confession from the defendant. See United States v. Hall, 348 F.2d 837, 842–843 (2d Cir. 1965); United States v. Middleton, 344 F.2d 78 (2d Cir. 1965). And it is not really the length of time of detention that is of most importance, but rather the state of the government's case against the person at the time of interrogation. United States v. Middleton, supra, at 81.

Congress that those of adolescent age be kept separate from hardened adult offenders. We may assume that it was no less concerned with the greater need of the young and inexperienced for independent, unbiased advice as to the right to counsel and the right to refrain from self-incrimination, when interrogated by the police authorities.

■■ Miranda v. State of Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1965), held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." In the case of a juvenile, compliance with the mandate of the Juvenile Act should be the minimum requirement of such safeguards. Treatment of an accused juvenile after arrest as a chattel in the possession of the officers, deliverable at will to the inspectors' offices for interrogation is a plain departure from the command of the statute for forthwith production of the juvenile before a magistrate. Statements taken while the statute is being ignored in this fashion must be held inadmissible.

Reversed and remanded for new trial.