UNITED STATES of America, Appellant,

v.

Jerome DeMARCE et al., Appellees.

Nos. 74–1699 to 74–1704.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1974.

Decided April 10, 1975.

Ronald Dosch, Devils Lake, N. D., for DeMarce, Longie and Whitetail.

Leo Broden, Devils Lake, N. D., for McKay and Thompson.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellant.

Before LAY and BRIGHT, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

The Government has charged Jerome DeMarce and five other young Indians (residents of the Fort Totten Indian Reservation in North Dakota) as juvenile delinquents under the Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq. (1970).[1] The Government appeals an order of the district court suppressing as evidence a .22 calibre rifle and also suppressing statements of these juveniles given to a representative of the North Dakota Bureau of Criminal Investigation and subsequent statements given to an FBI agent. These statements were made while the juveniles were incarcerated at a local jail.

Subsequent to oral argument, we entered an order remanding this case to the district court for a more precise ruling on whether the initial arrest was made, on a probable cause basis, for violation of state laws only or for violation of state and federal laws by the juveniles.[2] The district court has now ruled on this question and we proceed with our determination.

---

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. This Act was amended September 7, 1974. 18 U.S.C.A. § 5031 et seq. (Supp.1975). The specific provision of the statute now before us,

§ 5035, however, was not altered in a manner relevant to this case.

2. United States v. Jerome DeMarce, No. 74–1699 (8th Cir., Jan. 23, 1975).

DeMarce and the other youths were arrested during the early morning hours of Saturday, July 6, 1974, within the boundaries of the Fort Totten Indian Reservation. They had led authorities on a high-speed automobile chase over highways both on and off the Indian reservation. State law enforcement officers and officers of the Bureau of Indian Affairs (BIA) cooperated in chasing and apprehending the juveniles, but, according to the district court's finding, these youths were arrested by officers of the BIA. The district court found that these officers made the arrests "on a probable cause [to believe] that state and federal offenses had been committed."

At the time of the arrest, law enforcement officers suspected the juveniles of an attempted burglary in a nearby non-reservation community, automobile theft off the reservation, and assault committed on the reservation by shooting at the sheriff's car pursuing them. After the arrest, BIA officers transported the youths to the Devils Lake Law Enforcement Center at Devils Lake. These young men were incarcerated for about 80 hours before they were taken before a federal magistrate and charged under federal law as juvenile delinquents.

 The statements in question were taken during this 80-hour period. The trial court suppressed these statements and also suppressed as evidence a firearm allegedly used by the youths found along the highway which the youths claim authorities were able to locate because of information furnished in their statements. The issuance of the district court's suppression order rests on provisions of 18 U.S.C. § 5035, which limits detention of a juvenile under federal arrest to a period no longer "than is necessary to produce the juvenile before a committing magistrate."[3] We affirm

only that part of the district court's order suppressing the statements.

The United States contends that although federal officials participated in the arrests of these juveniles, the youths were actually arrested by state authorities on state charges, and that the "federal arrest," for purposes of § 5035, was not effectuated until July 9, when federal officials finally decided to bring federal charges against the youths. This determination to file federal charges was made the day of the hearing before the federal magistrate and some 70–80 hours after the youths' initial arrest and incarceration.

While we accept the Government's statement that it did not decide to file federal charges until July 9, the record nevertheless discloses substantial evidence sustaining the district court's finding that federal (BIA) law enforcement officers actually effectuated the arrests. Unfortunately, it appears that after the arrests the BIA officials did not furnish the FBI with adequate details of the crimes and the arrests of the young men. As a result, the FBI apparently assumed that the young men were in custody under state charges and that while a possible federal violation had occurred which called for further investigation, there was no need to expedite the investigation during the weekend following the arrest. An FBI agent did investigate the incident on the next Monday and Tuesday, July 8 and 9. On the afternoon of July 9th, this agent advised the United States Attorney for the District of North Dakota of the facts and received authorization to file a criminal complaint against the juveniles. These juveniles were finally taken before a federal magistrate at 5:00 P.M. on July 9, 1974—some 80 hours after their arrests. This delay in formalizing charges

---

**3.** Section 5035 reads in relevant part:

Whenever a juvenile is arrested for an alleged violation of any law of the United States, the arresting officer shall immediately notify the Attorney General.

If the juvenile is not forthwith taken before a committing magistrate, he may be de-

tained in such juvenile home or other suitable place of detention as the Attorney General may designate for such purposes * *.

In no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate.

against the juveniles, although apparently unintentional, cannot be justified.[4]

Section 5035 requires that whenever a juvenile is arrested for an alleged violation of any law of the United States certain steps must be taken relating to detention and that in no case shall the juvenile be detained "for a longer period than is necessary to produce the juvenile before a committing magistrate." Here the 80-hour delay which occurred obviously violates the statute and the district court properly suppressed the statements taken during this time. United States v. Binet, 442 F.2d 296 (2d Cir. 1971) (eight-hour delay); United States v. Glover, 372 F.2d 43 (2d Cir. 1967) (17-hour delay). The *Glover* court aptly observed:

> Treatment of an accused juvenile after arrest as a chattel in the possession of the officers, deliverable at will to the inspectors' offices for interrogation is a plain departure from the command of the statute for forthwith production of the juvenile before a magistrate. Statements taken while the statute is being ignored in this fashion must be held inadmissible. [*Id.* at 47.]

■ The United States further maintains that even if the statements are suppressed, the .22 calibre rifle should not be suppressed since officers located this weapon on information independent of the statements furnished by appellants. The record indicates that one of the officers observed the juveniles drive by him with their rifle approximately one mile south of Highway 57 on U.S. 281. The juveniles apparently proceeded north on U.S. 281 and turned east onto Highway 57 for another two miles, at which point they were apprehended. Thus, the authorities knew the rifle had to be near the road within this three-mile stretch of highway. Although the juveniles' statements may have somewhat facilitated locating the rifle, the rifle would have been discovered because the officers independently knew its approximate location. This independent information serves as an appropriate basis to allow the rifle to be admitted into evidence. *See* Parker v. Estelle, 498 F.2d 625, 629 (5th Cir. 1974); United States v. Falley, 489 F.2d 33, 40–41 (2d Cir. 1973); Peterson v. United States, 411 F.2d 1074, 1078–1079 (8th Cir.), cert. denied, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969); *cf.* United States v. Evans, 454 F.2d 813, 818–819 (8th Cir.), cert. denied, 406 U.S. 969, 92 S.Ct. 2423, 32 L.Ed.2d 668 (1972). Under these circumstances the appellants were not entitled to a suppression order relating to the .22 calibre rifle.

We affirm the district court's suppression order except with respect to suppression of the .22 calibre rifle.

---

4. Two cases cited by the Government, Grooms v. United States, 429 F.2d 839 (8th Cir. 1970), and United States v. Ramsey, 367 F.Supp. 1307 (W.D.Mo.1973), involved situations of initial state arrests and subsequent federal involvement. Thus, these cases are of no assistance to the Government in this case.