UNITED STATES of America, Appellee,

v.

Roland SMITH, Defendant-Appellant.

No. 749, Docket 77–1461.

United States Court of Appeals, Second Circuit.

Argued March 14, 1978.

Decided April 13, 1978.

---

* Of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

** Of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

Robert N. Shwartz, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Richard Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.

Barry T. Bassis, Legal Aid Society, Federal Defender Services Unit, New York City, Martin Erdmann, Legal Aid Society, New York City, for defendant-appellant.

Before GEWIN * and MULLIGAN, Circuit Judges and MILLER, Judge.**

MULLIGAN, Circuit Judge:

■ Roland Smith appeals from a judgment of conviction entered on September 6, 1977 in the United States District Court for the Southern District of New York after a four-day jury trial before the Hon. John M. Cannella, United States District Judge. On July 19, 1977 the jury returned a verdict of guilty on three counts: Count One, conspiracy, 18 U.S.C. § 371; Count Two, bank robbery, 18 U.S.C. §§ 2113(a) and 2; Count Three, armed bank robbery, 18 U.S.C. §§ 2113(d) and 2. Judge Cannella imposed concurrent prison sentences of five years on Count One and eight years on Counts Two and Three. The judgment of conviction is affirmed. However, the sentence on Count Two (bank robbery) is vacated since it is a lesser included offense of Count Three

---

* United States Court of Appeals for the Fifth Circuit, sitting by designation.

** United States Court of Customs and Patent Appeals, sitting by designation.

(armed bank robbery). The government has conceded that this sentence must be vacated. *United States v. Oliver,* 523 F.2d 253, 260 (2d Cir. 1975).

The evidence fully supported the convictions here. Roland Smith, with three colleagues, Fred Bellamy, Stanley McDuffie, and Ernest Bethea planned and executed the armed robbery of a branch of the National Bank of North America in New York City on March 30, 1977. Smith, Bellamy and McDuffie robbed the bank, while Bethea waited outside and hailed the cab which provided their getaway to Brooklyn where they later divided up the loot. Appellant Smith does not contest the sufficiency of the evidence against him which included the testimony of two of his fellow bank robbers as well as his own admission of participation in the crime. The arguments upon this appeal hinge upon the fact that at the time the crime was committed Smith was seventeen years of age and thus he claims the protections of the Juvenile Delinquency Act, 18 U.S.C. § 5031, *et seq.* Specifically, Smith argues that the time interval between his arrest and his initial appearance before the magistrate was unreasonable and in violation of 18 U.S.C. § 5033. He also urges that 18 U.S.C. § 5032 mandates the suppression of all statements made by him prior to a transfer hearing to consider whether he should be proceeded against as an adult. Since his admissions were made prior to the transfer hearing before Judge Brieant on May 12, 1977 appellant alleges the district court erred in not suppressing these statements. Smith also attacks the finding that his confession was voluntary.

I

After a three-day suppression hearing, Judge Cannella found the following facts. Smith was arrested on April 7, 1977 at 10:15 a. m. at the home of his grandmother, Ida Brown, by New York City Police detectives. In the presence of his grandmother, Smith was advised of the nature of the charge and of his constitutional rights. The appellant indicated he understood. Mrs. Brown was told where her grandson was going and a detective gave her his phone number so that she could contact him if she had any questions about her grandson. Between 10:30 and 10:45 a. m. Smith was placed in the custody of FBI agents at a Brooklyn precinct station. The federal officers again advised him of his rights and again the defendant indicated he understood them. He was then brought to the United States Attorney's office in Manhattan and on the way Smith was advised of his rights for the third time. At about 11:00 a. m. Smith was processed by the Marshal's office. He was interviewed at 1:45 p. m. by an Assistant United States Attorney who advised him of his constitutional rights for the fourth time. During his forty minute interview Smith admitted participating in the bank robbery and receiving a share of the stolen proceeds. At 3:00 p. m. Smith was taken before a magistrate.

At no time did Smith ever indicate a failure to understand his rights and he never asked for an attorney. At the time of this interview a sawed-off shotgun used in the robbery was still missing, as was most of the stolen cash. The fourth robber (Bethea) had not been identified or apprehended.

We find no reason at all to question the voluntariness of Smith's admissions of complicity during his interview by the Assistant United States Attorney. Although Smith's I. Q. score was admittedly low, Judge Brieant, at the transfer hearing, found him to be of average intelligence. Appellant had numerous previous encounters with the criminal justice system involving various assaults, robberies and larcenies which made him "street-wise" and fully conversant with his rights which were here articulated to him on four occasions. On each occasion he indicated that he understood them. The record contains absolutely no suggestion of coercion during the forty minute interrogation of appellant by the Assistant United States Attorney. Smith's grandmother was aware of her grandson's whereabouts after his arrest. Neither she nor Smith testified at the suppression hear-

ing. It is clear from all the surrounding circumstances that the confession was voluntary. *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969).

## II

■ 18 U.S.C. § 5033 provides:

Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensible to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

The juvenile shall be taken before a magistrate forthwith. In no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate.

Smith urges that he was detained "for longer than a reasonable period of time before being brought before a magistrate." Thus, he contends, his confession must be suppressed. Appellant relies upon two previous decisions of this court on this point, *United States v. Binet,* 442 F.2d 296 (2d Cir. 1971) and *United States v. Glover,* 372 F.2d 43 (2d Cir. 1967), both of which are distinguishable from the instant case.

In *Binet* a 15 year-old defendant had been observed committing the crime and all his co-defendants were in custody at the time of interrogation when he made his confession. As this court observed, "There was no need to question appellant for investigatory purposes for the participants in the crime were caught while perpetrating it." 442 F.2d at 299. Here, as indicated, a participant was still unapprehended; most of the loot and a firearm were still to be retrieved. Thus, the interview served a valid investigatory purpose.

In *Glover,* the juvenile was also 17 but although he was arrested at 6:00 p. m. he was not arraigned until 10:30 a. m. the next day. The crime charged (passing a forged and altered money order) did not involve violence. No weapon remained at large. The defendant made his confession to a Postal Inspector after spending the night in the Federal House of Detention. Here, not only was the interval before the juvenile was taken to the magistrate substantially shorter, but Smith was never detained in a prison facility prior to his interview with the Assistant United States Attorney.

We note further that both *Binet* and *Glover* were decided under the predecessor version of 18 U.S.C. § 5033 which provided that detention shall not "be for a longer period than is *necessary* to produce the juvenile before a committing magistrate" (emphasis supplied).[1] The present version has eliminated the word "necessary" and substituted "for longer than a *reasonable* period of time" (emphasis supplied). While we find nothing in the legislative history to indicate the reason for this change in the language of the statute, there is clearly no reason to believe that it imposes any more rigorous criterion than that applied in our previous decisions. We conclude that Judge Cannella properly determined that the time lapse between arrest and arraignment before the magistrate was reasonable under the circumstances and consequently, there was no violation of 18 U.S.C. § 5033.

## III

Appellant also argues that his admissions must be suppressed based upon the last sentence of § 5032 which provides, "Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions." Section 5032 details the procedures whereby a juvenile, not surrendered to state authorities, may be transferred after a hearing to the status of an adult defendant in a criminal case in the district court.[2] On May 12, 1977, a transfer hearing in this case was conducted before Hon.

---

1. The predecessor of 18 U.S.C. § 5033 was then 18 U.S.C. § 5035, 62 Stat. 858 (1948).

2. § 5032. Delinquency proceedings in district courts; transfer for criminal prosecution

Charles L. Brieant, United States District Judge for the Southern District of New York, who concluded that Smith's transfer to adult status was in the interests of justice. No claim of irregularity in these hearings is made by Smith. The statements sought to be suppressed were those made to the Assistant United States Attorney on April 7, 1977. Clearly these were made prior to the hearing of May 12, but has no bearing upon the determination of Smith's being held as an adult. Thus, the issue before us is whether the last sentence of § 5032 is to be read literally and in isolation or, as the government contends, suppression should be limited to those statements made by a juvenile *in connection with* a transfer hearing.

The only authority on point accords with the government's position here. *United States v. Spruille,* 544 F.2d 303 (7th Cir. 1976); *United States v. Cheyenne,* 558 F.2d 902, 906–07 (8th Cir. 1977). The court in *Spruille* reviewed this issue in considerable detail and we concur in its conclusion that the last sentence of § 5032 cannot be interpreted literally.

As the *Spruille* opinion demonstrates, the last sentence of § 5032 is unclear—it does not in terms prohibit the use of all statements made at any time by the juvenile without regard to the transfer hearing. Its focus upon the transfer hearing and its placement within § 5032 lead to the construction which best serves the intended purpose of the statute. The statutory scheme of § 5032 discloses the necessity of obtaining the cooperation of the juvenile in determining if a motion of transfer

A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

If an alleged juvenile delinquent is not surrendered to the authorities of a State or the District of Columbia pursuant to this section, any proceedings against him shall be in an appropriate district court of the United States. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise. The Attorney General shall proceed by information, and no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided below.

A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

Reasonable notice of the transfer hearing shall be given to the juvenile, his parents, guardian, or custodian and to his counsel. The juvenile shall be assisted by counsel during the transfer hearing, and at every other critical stage of the proceedings.

Once a juvenile has entered a plea of guilty or the proceeding has reached the stage that evidence has begun to be taken with respect to a crime or an alleged act of juvenile delinquency subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred.

Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions.

should be filed. Such factors as his social background, intellectual development and psychological maturity are essential in determining whether he should be tried as an adult. His revelation of this material in aid of the court determination which will be crucial to his welfare should not be used against him. However, his prior confession of crime at the time of his arrest or interrogation stands on a different footing. There is nothing in the Juvenile Delinquency Act, as amended in 1974, which would indicate that such a basic change, as the broad exclusionary rule argued for here, was intended. Had it been, surely there would have been some evidence of it in the legislative history of the statute—there is none. Moreover, a blanket prohibition against all statements made prior to the transfer hearing and having no relation to it would seriously impede the prosecution of dangerous juvenile offenders tried as adults. The interpretation urged by the defendant here would have the anomalous effect of making such statements admissible where no transfer hearing at all was held, thus penalizing the more immature and less dangerous juveniles who are not treated as adults. This incongruous result could not have represented the congressional intent. We therefore find that the last sentence of § 5032 must be read to mandate the suppression of statements made by a juvenile only when they have been made in connection with a transfer proceeding. The statements made here were not so connected and therefore were admissible in the trial in the district court.

The judgment of conviction is affirmed and the sentence on Count Two is vacated.