**UNITED STATES of America,**

v.

**Michael NASH, Defendant.**

**UNITED STATES of America,**

v.

**Elliot NEGRON, Defendant.**

**Nos. 85 Cr. 677 (GLG), 85 Cr. 676 (GLG).**

United States District Court,
S.D. New York.

Nov. 4, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the U.S.; Linda Imes; Asst. U.S. Atty., of counsel.

Legal Aid Society, New York City, for defendant Elliot Negron; Helen Coady, of counsel.

Norman Arnoff, New York City, for defendant Michael Nash.

## OPINION

GOETTEL, District Judge.

Defendants Michael Nash and Elliot Negron move pursuant to Fed.R.Crim.P. 41 to suppress as evidence post-arrest statements made by them to government agents prior to their presentment before a United States Magistrate. For the following reasons, their motions are granted.

## I. BACKGROUND

Defendants Nash and Negron are juveniles. On July 8, 1985, they were arrested in the Bronx for attempted armed bank robbery. Nash was arrested at approximately 10:15 a.m. on that date, orally advised of his rights, and driven to F.B.I. headquarters at 26 Federal Plaza. Upon his arrival, Nash was taken to an interview room and again advised of his rights. He signed a waiver of his rights and the agents took his pedigree,[1] at which time they learned of his age. They contacted his mother and advised her of her son's arrest and the charges filed against him. She indicated that she was unwilling to come down to court. It is unclear whether this notification took place before or after Nash made the statement at issue in this motion, or whether Mrs. Nash was advised of her son's constitutional rights. Nash was subsequently processed and taken to the magistrate at approximately 5:30 p.m., and presented around 7 p.m.

Negron was arrested at a different location, approximately one hour after the other defendants. The arresting officers determined that he was a juvenile and read him his rights. They then drove to his mother's home to search for weapons and to inform her of her son's arrest and the nature of the offense. His mother was not at home, but the officers informed Negron's juvenile brother and sister, the sister's adult husband, and Negron's aunt (who did not speak English) that Negron had been arrested for attempted armed bank robbery. It does not appear that these family members were advised of his constitutional rights, but they were told they could come to the arraignment. The officers then drove Negron to 26 Federal Plaza, where he waived his rights and made a statement. He was processed by the Marshal's office and Pre-Trial Services and taken to the magistrate around 5:30 p.m. He was presented with the other defendants around 7 p.m.

Both defendants were in custody for approximately 2–3 hours before making statements of confession. Nash was in custody for 8–9 hours, and Negron 7–8, before being arraigned before a magistrate. Several hours of the delay before presentment may be attributed to interviews of the defendants by Pre-Trial Services (in Negron's case, by his probation officer), assignment of counsel and counsel's interviews of the

---

1. A pedigree is basic information including full name, age, address, etc.

defendants, and congestion in the magistrate's courtroom.

## II. DISCUSSION

Section 5033 of the Federal Juvenile Delinquency Act provides:

> Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensible to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

> The juvenile shall be taken before a magistrate forthwith. In no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate.

18 U.S.C. § 5033 (1982). The defendants contend that their rights as juveniles under this statute have been violated. More specifically, they assert that because the government failed to notify their parents and because there was an unreasonable delay in bringing them before a magistrate, their confessions must be suppressed. The Government contends, first, that numerous efforts were made to reach the parents, and second, that the time period between the defendants' arrest and their presentment before a magistrate was reasonable under the circumstances. The requirements of the statute having been complied with, the Government submits, this Court should not suppress the statements.

There are but three Second Circuit decisions addressing the acceptable length of time a juvenile may be detained prior to arraignment before a magistrate. Two of those cases, *United States v. Glover*, 372 F.2d 43 (2d Cir.1967) (*"Glover "*), and *Unit-*

ed States v. Binet, 442 F.2d 296 (2d Cir. 1971), *on remand*, 335 F.Supp. 1000 (S.D. N.Y.1971) (*"Binet "*), were decided under the predecessor version of 18 U.S.C. § 5033, 18 U.S.C. § 5035.[2] In *Glover*, a 17-year-old defendant was detained overnight in a prison facility before being arraigned the following morning. During that time he was questioned, and he confessed. The court suppressed the statement, finding that the statute allowed detention only for the purpose of "prompt arraignment, before a judicial officer, so that the magistrate may explain and protect the juvenile's rights—among others, the right against compulsory self-incrimination and the right to the assistance of counsel." *Glover, supra*, 372 F.2d at 46. The court went on to state the following:

> Treatment of an accused juvenile after arrest as a chattel in the possession of the officers, deliverable at will to the inspectors' offices for interrogation is a plain departure from the command of the statute for forthwith production of the juvenile before a magistrate. Statements taken while the statute is being ignored in this fashion must be held inadmissible.

*Id.* at 47.

Several years later, in *Binet*, a 15-year-old defendant was detained for 7½ hours before his arraignment, during which time the government elicited incriminating statements from him. The district court found that "such an extensive time period, in and of itself, is violative of 18 U.S.C. § 5035, unless justified by extraordinary circumstances." *Binet, supra*, 335 F.Supp. at 1002. Finding that no such exigencies existed, the court held that routine delays and the good faith intentions of those government officials who processed the defendant were insufficient to satisfy the statutory proscription. *Id.* at 1002–03.

> If the juvenile is not forthwith taken before a committing magistrate, he may be detained in such juvenile home…
> In no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate.…

---

**2.** This version, 18 U.S.C. § 5035, provided, in relevant part:

> Whenever a juvenile is arrested for an alleged violation of any law of the United States, the arresting officer shall immediately notify the Attorney General.

In 1974, Congress amended the operative language of 18 U.S.C. § 5035. A comparison of the old version and its replacement shows that Congress retained the old standard of arraignment "forthwith," but barred "unreasonable" as opposed to "unnecessary" delays. Little in the legislative history of the 1974 amendments appears to address the reason for this change, but it is noted that it was "necessary to amend the Federal Juvenile Delinquency Act to guarantee certain basic procedural and constitutional protections to juveniles under Federal jurisdiction" as mandated by *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). S.Rep. No. 93–1011, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin.News, 5283 at 5284, 5312.

The Government and defendant Negron dispute the effect of the change in language. Negron contends that the new section demands the application of a more rigorous "forthwith" standard. He asserts that the addition of an explicit command that the defendant be brought forthwith before a magistrate and that his or her parents be notified reflect a congressional intent to strengthen the protection for arrested juveniles. The Government, relying on *United States v. Smith*, 574 F.2d 707 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978) (*"Smith"*), contends that the old statute embodied a more stringent "forthwith" requirement.

In *Smith*, a 17-year-old defendant was detained for 4–5 hours before his arraignment, during which time the government questioned him and he offered a confession. The Second Circuit, in its only decision construing the new section 5033, refused to suppress the statement and found that the delay for questioning was not unreasonable. The court noted that the delay

had served a "valid investigatory purpose" because "a participant [in the crime] was still unapprehended; most of the loot and a firearm were yet to be recovered." *Smith, supra*, 574 F.2d at 710. We do not view the *Smith* case as resting on the change in statutory language.

While there are some grounds for distinguishing *Smith* from *Glover* and *Binet*, this Court must candidly confess that it views the decisions as being basically inconsistent.[3] Moreover, the effect of *Smith* on the viability of the principles articulated in *Glover* and *Binet* is unclear, as is the correctness of either party's interpretation of the change in statutory language.[4] What is clear, however, is that unless the particular circumstances of a case permit otherwise, as demonstrated by *Smith*, the proscription against delay remains in force, and "forthwith" still means "forthwith." The Government contends that *Smith* makes the delay in the instant case reasonable. However, we may distinguish *Smith*, because the particular circumstance present there—the "valid investigatory purpose"—upon which that court rested, is not present here. Here, all of the defendants' co-defendants were already in custody at the time of Nash's and Negron's interrogation, and all of the physical evidence, including the weapon, had been recovered. Thus, it cannot be said that the delay here served a valid investigatory purpose.

In looking at the present language of the statute, we are influenced by the order in which its commandments appear. The first statement is that "[t]he juvenile shall be taken before a magistrate forthwith." It is followed by the statement, *"In no event* shall the juvenile be detained for longer than a reasonable period of time

---

**3.** In attempting to determine how the present Court of Appeals of the Second Circuit would rule on this case, if we are correct in our belief that the earlier decisions cannot be reconciled, we are confronted with the fact that the *Smith* case was decided by a Circuit Judge who subsequently resigned from the Court, a visiting Circuit Judge, and a Judge of the Court of Customs and Patent Appeals, with the result that none of

them are presently active judges on the Second Circuit bench. For that matter, only one of the judges on the *Glover* panel is still on the bench and none of the *Binet* judges are alive.

**4.** If pressed, we would agree with the defendant that, if anything, the change in language strengthens juveniles' rights.

before being brought before a magistrate." (Emphasis added.) The Government relies on the second statement as modifying and weakening the strength of the first sentence. We do not so interpret it. It is not always possible to take a juvenile before a magistrate. In the middle of the night or on weekends (at least from Saturday afternoon on in this District) it would be impossible to do so. Consequently, we interpret the second statement as covering that situation. When there is a magistrate available, we interpret the first statement as being a literal requirement to take the juvenile there immediately. In so interpreting the statute, we do not infer a constitutional right to such a presentment or suggest that the requirement is necessarily a wise one. We are merely attempting to interpret a congressional commandment in light of its plain language.

Assuming *arguendo* that this literal interpretation of the "forthwith" requirement is in any way incorrect, we turn now to consider other statutory language as well as another framework for analysis. The defendants challenge the Government's compliance with the notification requirement of the statute; they contend that the notice given to their parents of "the rights of the juvenile and of the nature of the alleged offense," as required by 18 U.S.C. § 5033, was inadequate. The Government argues that it made good faith efforts to reach the defendants' parents immediately after their arrest, and that such efforts constitute statutory compliance. It asserts that the arresting officers spoke with Negron's relatives immediately, and with Mrs. Nash eventually. The Government further asserts that the statute does not prohibit the government from taking a statement prior to such notification.

In support of its position, the Government relies on *United States v. Doe*, 701 F.2d 819 (9th Cir.1983) (*"Doe"*), in which the court denied the defendant's motion to dismiss for violations of section 5033, holding that a 34–hour delay in bringing a juvenile before a magistrate was not unreasonable, and that the government's failure to notify the juvenile's parent did not violate due process when the juvenile was not prejudiced. *Doe*, however, is factually distinguishable from the instant case. There, the juvenile's mother lived outside the country and was later contacted by defense counsel, the prosecution voluntarily declined to use the statements the defendant made prior to his arraignment and the notification of his mother, and the delay was due to the unavailability of a magistrate. Here, the juveniles' parents were more accessible to the Government, and on the morning of their arrest, a weekday, a magistrate was presumably available. A consideration of great importance to the *Doe* court was that the Government never used or intended to use the juvenile's statement. In the instant case, the Government apparently has every intention of using the defendants' confessions.

■■■ The Government suggests that defendant Negron's principal objection to its compliance with the notification provision is that his *mother* was not notified. We find this emphasis misplaced. The statute provides for notification of a parent *or* guardian *or* custodian, and it seeks to alert a more knowledgeable and responsible adult not only of the arrest and the charges, but also of the juvenile's constitutional rights, in order to protect the defendant from himself. Given that purpose, notification made after a statement has been given, or made without spelling out the juvenile's rights to a "responsible" adult, cannot satisfy the statutory mandate. We do not imply that a juvenile has a constitutional right to have an adult present during the interviewing process. We do find that the statute requires the notification of such an adult before a waiver of rights occurs. The Government's efforts at notification, although made with good intentions, do not satisfy the statute under the above analysis.

■■ The Government argues that the proper analysis in the Second Circuit for admissibility of a juvenile's confession is not whether each statutory requirement

has been met, but rather, under the totality of the circumstances, whether the statement was given voluntarily. *Smith, supra,* 574 F.2d at 709–10. The Government further contends that a statement cannot be found per se involuntary because one of the requirements of section 5033 has not been met. *Id.* It is true that some courts, in looking at all the facts of a case, have merged the notification and forthwith arraignment requirements. In so doing, the courts have found confessions elicited during an extended time period before arraignment admissible when the parents or guardian were actually present or had received satisfactory notice of the accused's rights. *See United States v. Indian Boy X,* 565 F.2d 585 (9th Cir.1977) (statements admissible despite delay prior to arraignment when juvenile's parent was present at time of rendition of *Miranda* rights and waivers); *see also Smith, supra,* (court relied not only on the "valid investigatory purpose" served by the questioning before arraignment, but also on the fact that the defendant was arrested at the home of his grandmother, who was present while he was advised of his constitutional rights and the nature of the charges against him).

The Government contends that the totality of circumstances of the instant case render the statements of Nash and Negron voluntary, ergo, admissible. It refers to its notification of Nash's mother and Negron's relatives, and to the reasonableness of the delay, attributing it to routine processing and interviewing. Finally, the Government asserts that Nash and Negron were not strangers to the criminal justice system, both having been previously convicted of violent crimes and having served time on those charges. This experience, it submits, made the defendants fully aware of their rights and the consequences of waiving those rights and making a statement. In other words, the Government argues that these particular juveniles are not within the purview of the statute's protection. *Smith, supra,* 574 F.2d at 709.

We are not persuaded by the Government's arguments. In fact, looking at the total circumstances of this case, we are more convinced that these statements must be held inadmissible. The Government's notification did not, and could not, effectuate the purpose of the statute. The 7–9 hour delay before presentment was unreasonable given the availability of a magistrate on that weekday morning. Finally, with respect to the Government's contention that the defendants were "streetwise," Nash and Negron may have been more aware of their rights than other juveniles having no prior experience with the criminal justice system. They also may have been intelligent enough to understand their position. Nonetheless, they are still juveniles, and remain entitled to the statutory protections accorded juveniles. Thus, their familiarity with the system cannot excuse the Government's failure to arraign them pursuant to the statutory requirements.

## III. CONCLUSION

For the above reasons, the defendants' motions to suppress statements taken before their arraignment are granted.

SO ORDERED.